John K. WALTERS, Plaintiff-Appellant,

v.

Robert F. DEAN, Jr., Defendant-Appellee.

No. 2–1285A392.

Court of Appeals of Indiana, First District.

Sept. 11, 1986.

John M. Cronin, Cronin & Rose, Indianapolis, for plaintiff-appellant.

George A. Cottrell, Cottrell Ittenbach Helbert & Sheeks, Indianapolis, for defendant-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

John K. Walters appeals from a judgment for the defendant entered pursuant to court trial in his action against Robert F. Dean, Jr., seeking to recover for property damage to his automobile. We affirm.

## FACTS

About 12:30 A.M. on March 2, 1985, Walters' son, Andrew, was driving a 1975 Chevrolet Monte Carlo automobile belonging to Walters north on Post Road. The lights on the car started growing dim around the 1100 block of North Post Road, and the car began losing power. The car finally stopped in the 1300 block and was without lights. At this location, Post Road has two lanes in each direction, and the Monte Carlo was stopped in the westernmost, or left hand northbound lane of Post Road. The night was dark and foggy and there were no street lights at the location where the car came to a stop.

Andrew left the car, unlighted and unattended, and walked to a house some two blocks away where the occupants were awake, and telephoned his father. When Andrew returned to the car, Deputy Sheriff Driver was there. Deputy Driver lighted three flares and placed them in position to provide a warning. Driver told Andrew the flares would burn for 15 to 20 minutes. Driver offered to call a wrecker, but Andrew declined because his father was on the way. Driver told Andrew not to leave the car and left the scene.

Walters arrived some five to ten minutes later. He and Andrew left the Monte Carlo unattended in the left hand lane and proceeded in Walters' car to 38th Street and Post Road, approximately 25 blocks distant, where they arranged for a wrecker to tow the Monte Carlo. Walters and Andrew returned to the scene where they discovered the Monte Carlo had been struck in the rear by Dean's Datsun pickup truck. The flares were not burning. Deputy Driver had been dispatched to the scene of the collision and arrived about twenty-five minutes after his first visit to the scene.

Dean testified that he did not see the Monte Carlo, saw no flares, and did not know what he hit. He was knocked unconscious and his only recollection is that paramedics were attending to him when he regained consciousness. Dean had been driving at 35 miles per hour in a 40 mile per hour zone immediately prior to the collision.

Lawrence and Virginia Dickey were following Dean's pickup truck in their car with Lawrence driving. Lawrence did not see the Walters' car. Virginia saw a shadow in the road just prior to the collision and yelled at Lawrence who was able to stop and avoid colliding with Dean's pickup truck.

Walters sued Dean for the damages to his Monte Carlo. Dean filed an answer denying fault and also filed an affirmative defense asserting the fault of the non-party, Andrew, was the sole cause of the collision. Trial to the court resulted in a judgment adverse to Walters.

## ISSUE [2]

The issue for our determination in this case is whether the judgment is contrary to law because the trial court failed to consider and properly apply the Indiana Comparative Fault Act. (Ind. Code § 34–4–33–1 *et seq.*).

## DISCUSSION AND DECISION

Before considering the issue before us, we note that both parties for their statement of facts in their briefs have summarized the testimony of each witness. We have stated repeatedly that our appellate rules contemplate a narrative statement of the facts, and that a witness by witness summary of the testimony is not a statement of facts within the meaning of Ind. Rules of Procedure, Appellate Rule 8.3(A)(5). *Elsperman v. Plump* (1983), Ind.App., 443 N.E.2d 1206; *Morris v. State* (1982), Ind.App., 433 N.E.2d 74; *Moore v. State* (1981), Ind.App., 426 N.E.2d 86 (dismissed for failure of appellant to file an amended brief, Ind.App., 428 N.E.2d 806).

**2.** In his motion to correct errors, Walters asserted the judgment was erroneous because it was contrary to the evidence. Record at 2. Because Walters is appealing from a negative judgment, he cannot challenge the sufficiency of the evidence to sustain the judgment. Rather, he may only challenge the judgment as being contrary to law. *Dotlich v. Dotlich* (1985), Ind.App., 475 N.E.2d 331, *trans. denied; Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92. This means we may reverse only where the evidence is uncontradicted and leads unerringly to a conclusion different from that reached by the trial court. *Id.* Because Walters did not assert the judgment was contrary to law in his motion to correct errors, he cannot argue such issue in his appellant's brief. *Rogers,* at 95; *City of Indianapolis v. Ervin* (1980), Ind.App., 405 N.E.2d 55.

Even had Walters asserted the judgment was contrary to law in his motion to correct errors, the evidence is not undisputed leading only to a conclusion opposite to that reached by the trial court. However, Walters did assert in his motion to correct errors and properly preserve on appeal the issue that the judgment was contrary to law because the trial court failed to consider and properly apply the comparative fault law. It is this issue which we address in this opinion.

Despite the failure of both parties to comply with the clear holdings of this court, because of the importance of this case as it relates to this state's comparative fault law, we will decide this case upon the merits.

Our General Assembly in 1983 adopted a comparative fault law, rejecting the common law doctrine of contributory negligence as a complete bar to recovery in negligence cases, thereby bringing this state in line with the vast majority of states which adhere to some form of a comparative fault law.[3] As a result of this legislation, negligence actions predicated upon occurrences on and after January 1, 1985, with some statutory exceptions not applicable here, are governed by the Indiana comparative fault law. Since the collision here occurred on March 2, 1985, the comparative fault act (Ind. Code § 34–4–33–1 *et seq.*) governed this case, and the trial court was bound to consider and apply the act in making its decision.

Those sections of the comparative fault law applicable to this case and which the court was required to consider and apply are:

"34–4–33–5 Instructions to jury; award of damages

"Sec. 5. (a) In an action based on fault that is brought against one (1) defendant or two (2) or more defendants who may be treated as a single party, and that is tried to a jury, the court, unless all the parties agree otherwise, shall instruct the jury to determine its verdict in the following manner:

(1) The jury shall determine the percentage of fault of the claimant, of the defendant, and of any person who is a nonparty. The percentage of fault figures of parties to the action may total less than one hundred percent (100%) if the jury finds that fault contributing to cause the claimant's loss has also come from a nonparty or nonparties.

(2) If the percentage of fault of the claimant is greater than fifty percent (50%) of the total fault involved in the incident which caused the claimant's death, injury, or property damage, the jury shall return a verdict for the defendant and no further deliberation of the jury is required.

(3) If the percentage of fault of the claimant is not greater than fifty percent (50%) of the total fault, the jury then shall determine the total amount of damages the claimant would be entitled to recover if contributory fault were disregarded.

(4) The jury next shall multiply the percentage of fault of the defendant by the amount of damages determined under subdivision (3) and shall then enter a verdict for the claimant in the amount of the product of that multiplication.

"(b) In an action based on fault that is brought against two (2) or more defendants, and that is tried to a jury, the court, unless all the parties agree otherwise, shall instruct the jury to determine its verdict in the following manner:

(1) The jury shall determine the percentage of fault of the claimant, of the defendants, and of any person who is a nonparty. The percentage of fault figures of parties to the action may total less than one hundred percent (100%) if the jury finds that fault contributing to cause the claimant's loss has also come from a nonparty or nonparties.

(2) If the percentage of fault of the claimant is greater than fifty percent (50%) of the total fault involved in the incident which caused the claimant's death, injury, or property damage, the jury shall return a verdict for the de-

---

**3.** Generally, there are two basic types of comparative fault laws which are designated as "pure" or "modified". Under the "pure" form, a plaintiff may recover a percentage of his damages even though his fault exceeds that of the defendant. Under "modified" contributory fault statutes, a plaintiff normally may recover a reduced amount of his damages so long as his negligence does not equal or exceed that of the defendant. The Indiana statute is a type of modified comparative fault law which requires, in some cases, consideration of the degree of fault of non-parties to the action as well as the fault of the parties.

fendants and no further deliberation of the jury is required.

(3) If the percentage of fault of the claimant is not greater than fifty percent (50%) of the total fault, the jury shall then determine the total amount of damages the claimant would be entitled to recover if contributory fault were disregarded.

(4) The jury next shall multiply the percentage of fault of each defendant by the amount of damages determined under subdivision (3) and shall enter a verdict against each such defendant (and such other defendants as are liable with the defendant by reason of their relationship to such defendant) in the amount of the product of the multiplication of each defendant's percentage of fault times the amount of damages as determined under subdivision (3).

"(c) In an action based on fault that is tried by the court without a jury, the court shall make its award of damages according to the principles specified in subsections (a) and (b) for juries."

and,

"34–4–33–10 Nonparty defense; assertion; burden of proof; pleadings; application

"Sec. 10.    (a) In an action based on fault, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty.    Such a defense is referred to in this section as a nonparty defense.

(b) The burden of proof of a nonparty defense is upon the defendant, who must affirmatively plead the defense.    However, nothing in this chapter relieves the claimant of the burden of proving that fault on the part of the defendant or

defendants caused, in whole or in part, the damages of the claimant.

"(c) A nonparty defense that is known by the defendant when he files his first answer shall be pleaded as a part of the first answer.    A defendant who gains actual knowledge of a nonparty defense after the filing of an answer may plead the defense with reasonable promptness. However, if the defendant was served with a complaint and summons more than one hundred fifty (150) days before the expiration of the limitation of action applicable to the claimant's claim against the nonparty, the defendant shall plead any nonparty defense not later than forty-five (45) days before the expiration of that limitation of action.    The trial court may alter these time limitations or make other suitable time limitations in any manner that is consistent with:

(1) giving the defendant a reasonable opportunity to discover the existence of a nonparty defense;  and

(2) giving the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action before the expiration of the period of limitation applicable to the claim...."

▮▮▮  Under subsection (c) of Ind. Code § 34–4–33–5, the court was required to allocate fault in the same manner required of juries in subsection (a),[4] subsection (b) not being applicable here.    Thus, the trial court's original judgment which merely found for the defendant and that the plaintiff take nothing by his action was erroneous for failing to comply with the clear dictates of the statute.

The questions for our decision are:  (1) what did the court have to determine in the way of allocation of fault in this case, and (2) whether its ruling on the motion to correct errors corrected its original error.

---

**4.** In cases tried to a jury, the act requires the verdict forms to allocate fault and disclose the calculations concerning the award. Ind. Code § 34–4–33–6 provides:

"Sec. 6.    The court shall furnish to the jury forms of verdicts that require the disclosure of:

(1) the percentage of fault charged against each party;  and

(2) the calculations made by the jury to arrive at their final verdict.

If the evidence in the action is sufficient to support the charging of fault to a nonparty, the form of verdict also shall require a disclosure of the name of the nonparty and the percentage of fault charged to the nonparty."

In its ruling on the motion to correct errors, the trial court stated the motion to correct errors was overruled and that "[t]he Court did consider the comparative fault of the parties. Since the plaintiff was 100% at fault, defendant isn't liable." This judgment alludes to the fault of the *parties*, presumably meaning the parties to the action, and finds the plaintiff, John K. Walters, bore 100% of the fault.

■ It is clear that an allocation of 100% of the fault to Walters cannot be based upon any negligence of his son, Andrew, who was a bailee of the Monte Carlo. Negligence may not be imputed from a bailee to the bailor, *Wenisch v. Hoffmeister* (1976), 168 Ind.App. 247, 342 N.E.2d 665; *Gagle v. Heath* (1944), 114 Ind.App. 566, 53 N.E.2d 547; 11 I.L.E., Negligence, § 112 (1959), unless the bailor has reserved such direction and control as to make the act of the bailee that of the bailor. 8 Am.Jur.2d, *Bailments*, § 209 (1980); 65A C.J.S., *Negligence*, § 161 (1966). No evidence of control by Walters of Andrew's activities in the use of the Monte Carlo is present. Thus, if Andrew was negligent, his negligence was not imputable to his father.

■ The next question concerns whether the trial court was required to allocate fault, if it found any, to the non-party Andrew. This is an issue which has engendered much controversy in the application of comparative fault laws. One school of thought holds that fault of non-parties always must be considered in allocating fault, otherwise no true comparison of fault can be made. *Bartlett v. New Mexico Welding Supply, Inc.* (1982), 98 N.M. 152, 646 P.2d 579; *Bowman v. Barnes* (1981), W.Va., 282 S.E.2d 613; *Paul v. N.L. Industries, Inc.* (1980), Okla., 624 P.2d 68; *Brown v. Keill* (1978), 224 Kan. 195, 580 P.2d 867. These courts require an allocation of fault to all parties to the occurrence, not merely to the parties to the litigation. In *Bowman*, the court, in reversing because of instructions limiting the allocation

of fault only to the parties to the action, stated at 282 S.E.2d 613:

"[W]e hold that in order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, it must be ascertained in relation to all of the parties whose negligence contributed to the accident, and not merely those defendants who were involved in the litigation."

On the other hand, it has been held that allocation of fault should be limited only to those who are parties to the lawsuit. *National Farmers Union Property and Casualty Co. v. Frackelton* (1983), Colo., 662 P.2d 1056; *Sugue v. F.L. Smithe Machine Co., Inc.* (1976), 56 Hawaii 598, 546 P.2d 527. The court in *Frackelton* discussed the reasons for both views, stating that the rule requiring allocation of fault to both parties to the action and non-parties is based upon the premise that comparison should be made among all parties at fault in the occurrence; that such rule promotes bringing all such parties into the action as parties to the lawsuit; and settlement is encouraged. The rule limiting allocation to the parties to the litigation, according to the *Frackelton* court, is supported by arguments that a comparison of the negligence of absent tortfeasors may defeat recovery by a deserving plaintiff, and it is unfair to saddle the plaintiff with the burden of litigating liability issues of a non-party. *Frackelton* held the term "party" in the Colorado statute meant party to the action, thereby precluding allocation of fault to a non-party. The court, however, indicated were it deciding a question of common law rather than statutory interpretation, it might hold otherwise.[5]

The Indiana comparative fault law clearly contemplates consideration of the fault of non-parties. Ind.Code § 34-4-33-5 requires the jury to determine the fault of non-parties; Ind.Code § 34-4-33-6 requires verdict forms to disclose the name and percentage of fault of a non-party if there

5. For a discussion of the pros and cons of including the non-party tortfeasor in the alloca-

tion of fault, see D.C. Sobelsohn, *Comparing Fault*, 60 Ind.L.J. 413, 445–57.

be evidence of such; and Ind.Code § 34–4–33–10 provides for the non-party defense as an affirmative defense which must be pleaded and proved by a named defendant asserting such a defense.

The question, under Indiana law, is whether or not the fault of a non-party must be considered in all cases, or only in those cases where the non-party defense is pleaded. Two writers have addressed this question, both of whom would limit allocation of fault to a non-party only where the non-party defense is asserted. Wilkins, *The Indiana Comparative Fault Act at First (Lingering) Glance*, 17 Ind.L.Rev. 687, 739 (1984), where the writer states:

"Section ten makes the defense an affirmative defense, and places the burden upon the defendant. *Where the defendant does not raise the defense, it clearly would be improper to instruct the jury to 'determine the percentage of fault ... of any person who is a nonparty,'* since even when the defense is raised the fact finder may not automatically consider '*any* person who is a nonparty,' as these instructions suggest. Together, the Act's definition of a 'nonparty' as 'a person who is, or may be, liable to the claimant in part or in whole for the damages claimed,' *the requirement that the jury name the 'nonparty' in the verdict, and the specificity with which section ten treats the defense, indicate quite strongly that the fact finder is not to assign accountability for the plaintiff's injuries to just any person whose actions the fact finder believes to be faulty.*" (Emphasis added).

Eilbacher, *Comparative Fault and the Nonparty Tortfeasor*, 17 Ind.L.Rev. 903, 921–22 (1984), states:

"[T]he requirement of pleading the defense serves to limit precisely the jury's role in the selection of persons against whom fault may be assigned. For example, suppose that no party advances at trial, by appropriate pleading or argument, the position that the fault of a certain nonparty was a proximate cause of plaintiff's injury. The often-heard instruction to the jury charges that while the jury must accept the instructions of law as given by the court, the jury is the exclusive judge of the facts. *May the jury then in the exercise of conscientious whim determine that John Doe, about whose conduct it heard evidence, but whose causal fault was not pleaded, was also guilty of causal fault and apportion such fault to John Doe in its verdict? The compelling answer must be negative and the jury must be so instructed as a precaution, perhaps to avoid a mistrial.* While there may be several reasons to support such a conclusion, the most obvious is that the jury will not have been instructed as to the legal duty of John Doe to the plaintiff. For example, assume that a plaintiff was injured as an automobile passenger of John Doe in a head-on collision with the auto of defendant, and the evidence is clear that the combined *negligence* of Doe and the defendant caused the collision. If plaintiff were a *guest* passenger of Doe, there may not be a recovery from him in the absence of his wanton or willful misconduct, of which Doe was not guilty. If the fault of John Doe were pleaded by the defendant, then the jury would be instructed that fault may be assigned to Doe *only* if he had acted with wanton or willful misconduct. *If the defendant does not plead the fault of Doe, the jury should be instructed, as a precaution, that causal fault may be apportioned only among the parties at trial.* To fail to so advise the jury would be to invite a mistrial." (Emphasis added).

We agree with the analyses of these writers. The Indiana legislature has adopted a middle-ground position between the two competing viewpoints concerning allocation of non-party fault. It is our opinion that allocation of non-party fault is to be made only in those cases where the non-party defense is specially pleaded by a named defendant. Otherwise, allocation of fault is to be limited to the parties to the action.

Here, Dean asserted the non-party defense. Consequently, the trial court was required to consider the fault of the non-party, Andrew, and to determine what percentage of fault was borne by him. The court, in ruling upon Walters' motion to correct errors, found Walters was 100% at fault thereby denying him any recovery. In our view, the finding that Walters was 100% at fault also finds that both Dean and Andrew were totally without fault, thereby satisfying, if somewhat inartfully, the statutory requirement concerning fault allocation. The question then becomes whether the trial court's finding that Walters was 100% at fault can stand.

■ Under our prior law, it was held that questions of contributory negligence are questions of fact to be determined by the trier of fact except where the facts are undisputed and only a single inference can be drawn therefrom. *Public Service Company of Indiana v. Gibbs* (1984), Ind.App., 460 N.E.2d 992, *trans. denied; Orville Milk Co. v. Beller* (1985), Ind.App., 486 N.E.2d 555; *State v. Melloy* (1980), Ind. App., 398 N.E.2d 1382, *trans. denied.* The same rule applies to the determination of negligence. *Rush v. Hunziker* (1940), 216 Ind. 529, 24 N.E.2d 931. The same rule applies to the determination of comparative fault. The existence of negligence or comparative negligence ordinarily is a question for the trier of fact. *Nurdin v. Anheuser-Busch, Inc.* (1980), Fla.App., 392 So.2d 928; *Lapierre v. Maltais* (1979), 119 N.H. 610, 406 A.2d 123. Allocation of each party's proportionate fault is a question for the trier of fact, *Scales v. St. Louis-San Francisco Railway Co.* (1978), 2 Kan.App.2d 491, 582 P.2d 300; 65A C.J.S., *Negligence,* § 262 (1966), except where there is no dispute in the evidence and the fact finder could come to only one conclusion. *Duchene v. Wolstan* (1977), Minn., 258 N.W.2d 601.

Here, the evidence was in conflict. Consequently, it was the function of the trial judge as the trier of fact to determine who was negligent and the percentage of fault attributable to the parties and the non-party. The trial judge, exercising his proper function as trier of fact, determined that all of the fault rested with Walters.

■ In determining whether the trial court's determination of fault can stand, we neither weigh the evidence nor judge credibility of witnesses. Rather, we examine only that evidence and reasonable inferences which support the trial court's decision. *State v. Thompson* (1979), 179 Ind. App. 227, 385 N.E.2d 198, *trans. denied.* In a case tried to the court without a jury we will not reverse unless the decision is clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A); *Stubbs v. Hook* (1984), Ind.App., 467 N.E.2d 29, *trans. denied; Hurt v. Polak* (1979), Ind.App., 397 N.E.2d 1051. The judgment of a trial court will be found to be clearly erroneous only when upon our review of all the evidence we are left with a firm conviction that a mistake has been made. *University Casework Systems, Inc. v. Bahre* (1977), 172 Ind.App. 624, 362 N.E.2d 155, *trans. denied.* The judgment of the trial court must be upheld if it can be sustained upon any legal theory which the evidence supports. *Hurt,* 397 N.E.2d at 1053.

■ Our review of all the evidence in this case leads us to the conclusion that the trial court, as trier of fact, could have found that Walters was negligent in leaving his disabled Monte Carlo automobile standing unattended in the left-hand northbound lane of Post Road, in a dark and unlighted location, on a damp and foggy night, without any lights or other warnings, and going with Andrew to a location some twenty-five blocks away to obtain a wrecker, and being gone for a sufficiently long period of time that the flares provided by Deputy Driver burned out. It was reasonably foreseeable that another driver might not see the Monte Carlo and might collide with it. We believe the evidence supports the conclusion. Whether we would have reached the same result is not the question. We cannot substitute our judgment for that of the trial court. The evidence does not lead unerringly to a result contrary to that reached by the trial

court. The judgment is not clearly erroneous. The evidence does support the trial court's determination. Therefore, we must affirm.

Judgment affirmed.

ROBERTSON, P.J., and NEAL, J., concur.