**Doris J. BOWLES,**
**Defendant–Appellant,**

v.

**William J. TATOM, Plaintiff–Appellee,**

**City of Bedford, John Williams, Mayor, Herbert E. Nugent and Clydean Nugent, Defendants.**

**No. 47A01–8710–CV–240.**

Court of Appeals of Indiana,
First District.

June 2, 1988.

James L. Whitlatch, Bunger, Robertson, Kelley & Steger, Bloomington, for defendant-appellant.

Darlene Steele McSoley, Steele, Steele & Steele, Bedford, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Doris J. Bowles appeals from the Lawrence County Court's judgment in favor of William J. Tatom, and determination that she was 100% at fault in an automobile accident. We affirm in part and reverse in part and remand for further proceedings and a reassessment of fault percentage.

## FACTS

On the morning of June 14, 1986, William J. Tatom was proceeding north on "I" Street a one-way through street in Bedford, Indiana. At the same time Doris J. Bowles was proceeding west on Summit Lane toward the intersection with "I" Street. Bowles was traveling at a speed between ten to fifteen (10–15) miles per hour. Bowles testified she was driving slowly because she was unfamiliar with and had never driven in the area. Stop signs and one-way street signs were posted for Summit Lane at the intersection with "I" Street. However, dense foliage covered both the stop sign and the one-way street sign on the north side of Summit Lane, and blocked the signs from the vision of persons proceeding west on Summit Lane. Bowles failed to stop at the intersection with "I" Street and ran the stop sign. Tatom's truck was almost into the intersection when Bowles drove into his path. Tatom quickly applied his brakes, but was unable to avoid a collision. Bowles also was unable to avoid the collision, and testified she did not see Tatom's vehicle until she was in the middle of the intersection. Three members of the Bed-

ford City Police were called to investigate the accident. After viewing the scene and interviewing the drivers and witnesses, Officer Dennis Wellman found Bowles at fault.

On January 19, 1987, Tatom filed a *pro se* notice of claim in the Small Claims Division of the Lawrence County Court against Bowles, the City of Bedford, and John Williams, the mayor of Bedford. On April 13, 1987, the city and the mayor filed an answer and named the adjacent property owners, Herbert E. Nugent and Clydean Nugent, as nonparties under the comparative fault statute, and requested a continuance. Thereafter, Tatom hired counsel, and on May 29, 1987, filed an Amended Notice of Claim which named the Nugents as additional defendants.

On July 27, 1987, a bench trial was held. Tatom testified as to the events of the accident and rested her case. Thereafter, the city, the mayor, and the Nugents moved to have the claims against them dismissed. At this point in the trial no defenses had been raised. The trial court determined no evidence was presented by Tatom to establish any liability in the city, mayor, or Nugents, and accordingly, dismissed the claims against them. Bowles did not object to the dismissal of the other defendants. After the other defendants were dismissed, Bowles' attorney cross-examined Tatom. Thereafter, Bowles testified, and evidence was introduced to demonstrate the scene of the accident. The evidence included pictures taken the day after the accident. The pictures illustrated clearly that the stop sign for the westbound traffic of Summit Lane was blocked from view. At the close of Bowles' testimony, the trial judge took the case under advisement. On July 30, 1987, the trial judge entered a judgment in favor of Tatom and found Bowles 100% at fault under the comparative fault statute and assessed damages accordingly. Bowles appeals the trial court's determination of fault and allocation of damages.

### ISSUE

Bowles presents one (1) issue for review:

Whether the trial court erred in finding Bowles 100% at fault?

### DISCUSSION AND DECISION

■ Bowles argues that the trial court erred by assessing any fault against her, and alternatively, by assessing 100% of the fault to her. Bowles argues first that the evidence established uncontradictorily that the stop sign for the westbound traffic of Summit Lane was obscured from sight and that as such she could not be at fault for the accident. This court disagrees. The evidence in this case does not lead unerringly to a conclusion that Bowles was not at fault. The evidence indicates that stop signs were posted for both the east and westbound traffic of Summit Lane. The evidence indicates also that the back side and shape of the eastbound stop sign was visible from the westbound lane. The evidence indicates further that Bowles failed to look both left and right before proceeding into the intersection, and failed to look left until she was in the middle of the intersection. Therefore, this court cannot say that the trial court acted contrary to law in finding Bowles at fault.

■ Bowles argues alternatively that even if the trial court found properly that she was at fault, the trial court erred by assessing 100% of the fault against her. This court agrees. In reviewing a trial court's allocation of fault in a bench trial this court applies the standard of review found in Indiana Rules of Procedure, Trial Rule 52(A). Accordingly, this court will not reverse the trial court's determination unless it is clearly erroneous. Trial Rule 52(A); *Walters v. Dean* (1986), Ind.App., 497 N.E.2d 247, 254. In reaching a decision under this standard, this court neither reweighs the evidence nor judges witness credibility. *Walters*, at 254. However, the trial court's decision will be found clearly erroneous if upon a review of all the evidence this court is left with a definite and firm conviction that an error has been made. *Id.*

Under Indiana's Comparative Fault Act, Indiana Code section 34-4-33-1 et seq., fault percentages shall be allocated to the

claimant, the defendants, and any nonparties. Ind.Code § 34-4-33-5; *Walters*, at 253. However, this court held in *Walters*, that fault percentage may not be allocated where the nonparty defense is not specifically pleaded. *Id.* Thus, before fault can be allocated to a nonparty a defendant must plead the empty chair defense, and point to a nonparty and place the claimant on notice. *Id.* The pleading rule found in *Walters* is designed to prevent the inequity that occurs when the defendant surprises the claimant by pointing to a nonparty at a late date. This rule does not apply to the allocation of fault between named parties to the lawsuit. A defendant does not have to point at another pleaded party to invoke the fault allocation process of the Comparative Fault Act.

▇▇▇ The review of all the evidence in the present case leaves this court with a definite and firm conviction that the trial court erred by assessing 100% of the fault to Bowles. Although this court holds that the evidence of the hidden stop sign did not establish that Bowles was without fault, this evidence does establish that Bowles was not 100% at fault. The evidence indicates uncontradictorily that the hidden stop sign contributed substantially to the accident. Accordingly, the trial court should have assessed a percentage of the fault against the party or parties responsible for the stop sign and the obstruction. In the present case, the City, the Mayor, and the Nugents potentially were responsible for the stop sign and the obstruction. Although the City, the Mayor, and the Nugents were dismissed from the lawsuit, fault percentage could be allocated to them even though Bowles did not plead the empty chair defense. In the present case, the City, the Mayor, and the Nugents were

parties up until the close of Tatom's case-in-chief. As such, Bowles was entitled to rely on the fault allocation provisions of the Comparative Fault Act without specific pleading, and could continue to rely on the fault allocation after the other named defendants were dismissed. Furthermore, although the trial court dismissed Tatom's claims against the other defendants, the dismissal did not amount to a zero percent (0%) fault allocation. Rather, the dismissal resulted merely in a bar to Tatom's obtaining a judgment against those defendants. The dismissal did not prohibit Bowles from establishing the respective fault percentage that should be allocated to these defendants.[1] Therefore, this court reverses the trial court's assessment of 100% of the fault to Bowles and remands for further proceedings and a reassessment of the fault percentages.

Affirmed in part, reversed in part, and remanded for further proceedings and a reassessment of fault percentage.

Costs assessed against the Appellee.

ROBERTSON, J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. By statutory definition, parties in a comparative fault action can never revert to nonparty status, and the trial court's T.R. 50(A) judgment here operated as a zero percent fault allocation as to the City, the Mayor, and the Nugents as a matter of law.

Indiana's Comparative Fault Law, at IC 34-4-33-2 reads in part:

(a) As used in this chapter: ...

---

1. This court notes that Indiana Code section 34-4-33-8 provides that the Comparative Fault Act "does not apply in any manner to tort claims against governmental entities or public employees under IC 34-4-16.5." However, in the present case, the *claims* against the City, the Mayor, and the Nugents were dismissed at the close of Tatom's case-in-chief. The only claim remaining in the lawsuit was the claim against Bowles. Since the governmental tort claims were dismissed, section 8 of the Comparative

Fault Act became inapplicable, and fault percentage could be assessed against the City, the Mayor, and the Nugents as though they were still parties, even though Tatom could not obtain a judgment against these parties. *See e.g., Huber v. Henley* (S.D.Ind.1987), 656 F.Supp. 508 (holding empty chair defense could be raised with regard to nonparty governmental entity which fell within the Comparative Fault Act's definition of "nonparty" and noting that section 8 does not preclude such a finding.)

"Nonparty" means a person who is, or may be, liable to the claimant in part or in whole for the damages claimed but who *has not been joined in the action as a defendant* by the claimant.... (Emphasis supplied).

The City, the Mayor, and the Nugents were all joined as defendants in this action by Tatom. In the first instance, these defendants do not meet the statutory definition of nonparties.

Further, the trial court's T.R. 50(A) judgment in favor of these defendants amounted to a determination of zero percent fault as to each such defendant as a matter of law. Ind. Rules of Procedure, Trial Rule 50(A) provides in part

Where all or some of the issues in a case tried before a jury ... are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict....

To make a prima facie case in a negligence action, a plaintiff must present evidence showing (1) defendant owed plaintiff a duty imposed by law to do or not to do a certain act, (2) defendant violated that duty by an act or omission to act which constituted a breach of that duty, and (3) plaintiff's injuries were proximately caused by such breach of duty. *Dunn v. Cadiente* (1987), Ind.App., 505 N.E.2d 850, 851–852; *Perry v. NIPSCO* (1982), Ind.App., 433 N.E.2d 44, 49. Absent probative evidence or reasonable inference arising from the evidence as to any one or more of these three elements, a prima facie case has not been established. Under such circumstances, a T.R. 50(A) judgment on the evidence is properly entered and the case taken from the factfinder because the plaintiff is not entitled to have the question of damages factually considered as to any defendant against whom a cause of action has not been proved. Because a T.R. 50(A) judgment on the evidence takes the case from the factfinder, I believe the entry of such judgment constitutes a judicial determination of zero percent fault allocation as to each defendant so dismissed, as a matter of law. Here, the plaintiff raised no issue as to the propriety of the T.R. 50(A) judgment below. Thus, we are bound by the trial court's determination on that subject. In my opinion the trial court, as factfinder, correctly refused to consider the percentage of fault of the City, the Mayor, and the Nugents because they were not liable in damages to Tatom, as a matter of law.

For those reasons, I would affirm the trial court in all things.