**DeVOE CHEVROLET–CADILLAC, INC. d/b/a Auto–Credit, Appellant (Defendant & Counter–Claimant Below),**

v.

**James CARTWRIGHT and Teresa Cartwright, Appellees (Plaintiffs & Counter–Defendants Below).**

No. 27A04–8712–CV–378.

Court of Appeals of Indiana, Fourth District.

Aug. 23, 1988.

Charles J. Riley, Riley & Grogg, Marion, for appellant.

J. Richard Guerrero, Guerrero, Guerrero & Guerrero, Marion, for appellees.

CONOVER, Judge.

Defendant–Appellant DeVoe Chevrolet–Cadillac, Inc. (DeVoe) appeals the trial court's judgment in favor of Plaintiffs–Ap-

pellees James and Theresa Cartwright (Cartwrights).

We reverse.

DeVoe presents one issue for our review. Restated, it is:

did the trial court err by granting judgment for the Cartwrights and denying DeVoe's counterclaim.

The Cartwrights test drove a 1980 Chevette which they later purchased on December 13, 1985. During the drive the couple did not smell exhaust fumes. They bought the car "As Is".[1] The sales contract excluded all express warranties and the following implied warranties: 1) merchantability, 2) fitness for a particular purpose, 3) course of dealing, and 4) usage of trade.

Thirty days later, the Cartwrights began smelling exhaust fumes. The next day they drove the car to DeVoe and complained, but DeVoe would not repair the vehicle. Thereafter, the Cartwrights discovered steel plates had been placed over the rust holes in the floor. It is unclear when the Cartwrights made this discovery, but the exhaust fumes made the Cartwrights ill.

The Cartwrights continually tried to "deal" with DeVoe concerning the defect, however, DeVoe refused to accommodate them. In January, 1987, DeVoe rejected the Cartwrights' offer to trade the Chevette for a new car. The Cartwrights abandoned the vehicle in April, 1987. At that time they had driven the car for approximately 16 months and put 5,000 to 10,000 miles on it.

The Cartwrights financed $2,965.66 with DeVoe. Upon abandoning the car their unpaid balance was $1,583.30. The Cartwrights filed suit seeking to rescind the contract under the theories of (1) strict liability, (2) fraudulent concealment, (3) breach of warranty, and (4) revocation. DeVoe counterclaimed for the unpaid balance of the sales contract plus attorney fees. The trial court entered judgment in favor of the Cartwrights awarding them

$2,600.00 and denied DeVoe's counterclaim. DeVoe appeals.

When a bench trial has occurred, we will not reverse the judgment of the trial court unless the decision is clearly erroneous. *Walters v. Dean* (1986), Ind.App., 497 N.E.2d 247, 254; Ind.Rules of Procedure, Trial Rule 52(A). The judgment of a trial court will be found clearly erroneous only when review of the entire record leaves the reviewing court with a definite and firm conviction a mistake has been made. *Milwaukee Guardian Ins., Inc. v. Reichart* (1985), Ind.App., 479 N.E.2d 1340, 1343. Any legal theory which the evidence supports will be used to sustain the judgment of the trial court. *Walters, supra*, at 254. This court neither weighs conflicting evidence nor judges the credibility of witnesses. *Evans v. National Life Acc. Ins. Co.* (1984), Ind.App., 467 N.E.2d 1216, 1218. Rather, we examine only the evidence and reasonable inferences which support the trial court's decision. *Walters, supra*, at 254.

DeVoe first argues the Cartwrights continued to unreasonably use the car after discovery of the defect. We agree.

I.C. 33–1–1.5–4(b)(1) states:

It is a defense that the user or consumer bringing the action knew of the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it.

A consumer who incurs or assumes the risk of injury by continuing to use a product after discovering a defect is subject to the defense of misuse. *Hinkley v. Montgomery Ward, Inc.* (1986), Ind.App., 497 N.E.2d 255, 257, citing *Perfection Paint and Color Co. v. Konduris* (1970), 147 Ind.App. 106, 258 N.E.2d 681, 689. The defense of misuse is premised on voluntary consent as tested by a subjective standard. *Freuhauf Trailer Division v. Thornton* (1977), Ind.App., 366 N.E.2d 21, 29.

Here, the Cartwrights voluntarily (1) kept the car for approximately 13 months, (2) drove the car for 5,000 to 10,-

1. The Cartwrights admitted they understood and were aware of the "As Is" condition.

000 miles, and (3) made no attempt to have the car repaired by anyone other than DeVoe, after discovery of the defect. Such evidence demonstrates unreasonable use after discovery, and is a defense to this action. *Cf.* I.C. 33–1–1.5–4(b)(1), *supra.*

DeVoe next asserts the Cartwrights failed to prove fraudulent concealment. We agree.

██ The party asserting fraudulent concealment must establish by a preponderance of the evidence,

(1) the wrongdoer had a duty to disclose certain facts to another,

(2) it knowingly failed to do so, and

(3) the other justifiably relied upon such non-disclosure to his detriment.
*Brown v. Indiana National Bank* (1985), Ind.App., 476 N.E.2d 888, 891; *Barnd v. Borst* (1982), Ind.App., 431 N.E.2d 161, 169.

██ The Cartwrights cannot rescind the contract under this theory. The facts in the record although viewed in a light most favorable to the Cartwrights do not support even an inference DeVoe knowingly failed to disclose the existence of the rust holes. There is an absence of evidence DeVoe knew or ought to have known of the rust holes existence prior to the sale. Without such evidence, this theory fails.

██ DeVoe next contends they adequately disclaimed any implied warranty. We agree.

I.C. 26–1–2–316(3)(a) provides:
... all implied warranties are excluded by expressions like "As Is", "With All Faults", or other language which in common understanding draws the Buyers attention to the exclusion of warranties and makes plain that there is no implied warranty.

Here, the Cartwrights understood and were aware they bought the car "As Is." However they contend the limitation is of no consequence since DeVoe made an express warranty overriding the "As Is" limitation. The record contains no evidence showing DeVoe made a representation which created an express warranty. Ab-

sent such evidence, the "As Is" limitation controls.

DeVoe finally asserts it did not receive adequate notice of revocation within a reasonable time. We agree.

I.C. 26–1–2–608(2) states:
Revocation of acceptance must occur within a *reasonable time* after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. (Emphasis supplied).

██ Notice of revocation should be in writing. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 315 (1984), (see also cases cited therein). Nonwritten notice or equivocal notice of revocation does not fare well in the courts. White & Summers at 315. Similarly, in *Courtesy Enterprises, Inc. v. Richards Labs* (1983), Ind.App., 457 N.E.2d 572, 567–578, the buyer's act of returning goods was not adequate notice of revocation. *See also Potts v. Offutt*, (1985), Ind. App., 481 N.E.2d 429, 432–433 (seller's refusal to deliver mobile home was not adequate revocation). Merely complaining about the quality of goods, without more, does not adequately inform the seller the buyer has revoked. Robertson, *Rights and Obligations of Buyers with Respect to Goods in Their Possession After Rightful Rejection or Justifiable Revocation of Acceptance*, 60 Ind.L.J. 663, 670.

██ Notice of revocation must occur within a reasonable time after tender of the goods. *Courtesy Enterprises*, at 576; I.C. 26–1–2–608(2). What constitutes a reasonable time depends upon the nature, purpose and circumstances of the transaction. *Royal Business Machines v. Lorraine Corp.* (7th Cir.1980), 633 F.2d 34, 48. A reasonable time includes time to inspect the goods, *see* U.C.C. 2–606(1)(b) and may be extended by a seller's promises to cure a defect. *Jones v. Abriani* (1976), 169 Ind. App. 556, 350 N.E.2d 635, 643.

██ Under the undisputed evidence here, the Cartwrights did not give DeVoe

adequate notice of revocation within a reasonable time since (1) they merely complained after discovering the defect, (2) their efforts to "deal" evinced nothing more than dissatisfaction, (3) notice was not written, (4) promises to cure were not made, and (5) their attempt to trade the old car in for a new one was only an offer to negotiate. Such actions do not constitute revocation, as a matter of law.

Reversed and remanded for further proceedings consistent with this opinion.

MILLER and BUCHANAN, JJ., concur.