**Sharon UTLEY and Thomas Utley, Appellants–Plaintiffs,**

v.

**Daniel HEALY, Appellee–Defendant.**

**No. 65A05–9505–CV–160.**

Court of Appeals of Indiana.

March 29, 1996.

---

Daniel J. Tuley, Jon K. Aarstad, Robert John & Assoc., Evansville, for appellants.

David R. Sauvey, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Sharon and Thomas Utley appeal the judgment in favor of Daniel Healy for injuries that Sharon sustained in a car collision. The Utleys raise four issues for our review which we restate as:

(1) whether the trial court properly admitted the contents of a work order into evidence;

(2) whether the jury was inappropriately instructed and given improper verdict forms;

(3) whether the trial court erred in denying the Utleys' motion for judgment on the evidence concerning Healy's nonparty defense; and

(4) whether the trial court improperly admitted evidence in violation of Ind. Evidence Rule 407.

We affirm.

The facts most favorable to the judgment follow. On September 30, 1990, Sharon Utley was driving south on Munchoff street in Mt. Vernon, Indiana, and approaching the 5th street intersection at approximately twenty miles per hour. At the same time, Healy was driving east on 5th street. A warehouse on the northwest corner of the intersection at Munchoff and 5th streets blocks the view of drivers approaching as were Utley and Healy. In addition, while drivers traveling eastbound on 5th street have a stop sign at the Munchoff intersection, the view of the stop sign was blocked by a tree.

When Sharon passed midway into the intersection, she saw Healy's car enter the intersection. Utley and Healy collided in the

middle of the intersection. At the time of the collision, Healy was driving at approximately thirty to thirty-five miles per hour. Utley sustained bodily injuries and incurred about $5,760.98 in medical expenses. Utley's car sustained damage on the passenger side.

On September 29, 1992, the Utleys filed a complaint against Healy for negligence.[1] Healy named the city of Mt. Vernon as a nonparty because the city had negligently allowed a stop sign to become obstructed by a tree. Healy alleged that this negligence proximately caused the collision. A jury trial was held on December 13 and 14, 1994. Following Healy's case, the Utleys moved for judgment on the evidence on Healy's nonparty defense because Healy had failed to show that the city had actual or constructive notice of the obstructed stop sign. The trial court denied this motion. After instructing the jury and providing verdict forms, the jury returned a verdict in favor of Healy.

On January 12, 1995, the Utleys filed a motion to correct errors, which was overruled. The Utleys now appeal.

I.

The first issue raised for our review is whether the trial court improperly admitted exhibit C into evidence over the Utleys' hearsay objection.[2] Exhibit C is a Mt. Vernon Street Department work order which indicated a "problem" with the intersection of Munchoff and 5th streets such that a tree was blocking the view of the southwest corner stop sign. Record, p. 581.

In reviewing an evidentiary ruling on appeal, we must sustain the trial court's action if it can be done on any legal ground on the record. *Cain v. State*, 261 Ind. 41, 45–46, 300 N.E.2d 89, 92 (1973). We may affirm if the ruling can be sustained on any theory consistent with the evidence presented. *Taylor v. State*, 615 N.E.2d 907, 912 (Ind.Ct. App.1993). Thus, on review, we will uphold a correct legal ruling even where based on

incorrect or absent legal reasoning below. *Reaves v. State*, 586 N.E.2d 847, 857 (Ind. 1992).

The Utleys maintain that the trial court improperly admitted the exhibit into evidence over their hearsay objection. Hearsay is an out of court statement offered for the truth of the matter asserted. Ind.Evidence Rule 801(c). A hearsay statement is not admissible unless it falls under one of the enumerated exceptions in the rules. Evid.R. 802. However, a statement offered not for the truth of the matter asserted but rather for some other relevant purpose is admissible. Evid.R. 402; *see Fleener v. State*, 648 N.E.2d 652, 656 (Ind.Ct.App.1995), *transfer granted on other grounds*, 656 N.E.2d 1140 (Ind.).

The Utleys argue that the work order contains an assertion made by an unknown declarant and that the exhibit was offered for the truth of the matter asserted, namely, that a tree obscured Healy's view of the stop sign. Healy maintains that the work order is not hearsay because it was offered to prove that the stop sign was under the city's control instead of to prove that the tree blocked the view of the stop sign. For Healy to satisfy the burden of his nonparty defense, he needed to prove that the city had control over the sign. *See* Ind.Code § 34–4–33–10(b). Specifically, to successfully set forth a nonparty defense, Healy had to establish that the city breached a duty of care owed to the Utleys which proximately caused the injuries. *MacDonald v. Maxwell*, 655 N.E.2d 1249, 1250 (Ind.Ct.App.1995), *reh'g denied*. Once these elements were established, the city became liable, as a nonparty, to the Utleys for Sharon's injuries. I.C. § 34–4–33–2(a)(2).

The state and its counties have a duty to maintain and repair roads within their control. *Spier by Spier v. City of Plymouth*, 593 N.E.2d 1255, 1258 (Ind.Ct. App.1992), *reh'g denied, trans. denied; see*

---

1. Healy died of natural causes prior to trial without being deposed.

2. We note that the record is unclear whether the exhibit was admitted into evidence. However, it is clear that the exhibit's contents were read into evidence when Steven Wild, the commissioner of

the Street Department, testified. While the exhibit does appear in the record of proceedings, for purposes of our review, we will apply Healy's hearsay objections to the reading of the contents into the record rather than the actual exhibit.

*Miller v. State Highway Dep't*, 507 N.E.2d 1009, 1012 (Ind.Ct.App.1987), *reh'g* 514 N.E.2d 93. Included in this duty is the obligation to maintain and repair traffic control signals, including stop signs. *Spier*, 593 N.E.2d at 1258. However, the duty does not attach unless the city has actual or constructive notice of a dangerous situation. *Id.*

Applying the law to the record before us, we find that the admission of the work order's contents was proper to establish that the city had notice of a dangerous situation. Notice of a dangerous condition, such as the obscured stop sign, was necessary to establish that the city had a duty to maintain the stop sign and that the city breached its duty to maintain the stop sign. Since this evidence was relevant to the disposition of this case, the admission of the work order was proper. Therefore, we must affirm on this theory which is consistent with the evidence presented in this case. *See Taylor*, 615 N.E.2d at 912. Accordingly, the trial court properly admitted the work order. Finally, because we hold that the work order was properly admitted into evidence, we need not address the parties' dispute about whether the work order falls within an exception to the hearsay rule and whether the Utleys offered a specific objection to avoid waiving the argument.

### II.

■ The second issue raised for our review is whether the jury was properly instructed about comparative fault law and provided with appropriate verdict forms. At trial, the jury was instructed in part that "[i]f you find the Defendant is not at fault or that the Plaintiffs have failed to meet their burden of proof, then your verdict should be for the Defendant, you should sign Verdict Form C, and no further deliberation of the Jury is necessary." Record, p. 657. The jury was given three verdict forms, including Verdict Form C, which simply stated that "We, the Jury, find for the defendant." Record, p. 152. This form only required the signature of the jury foreperson and the date.

The Utleys argue that by giving the instruction and using Verdict Form C, the trial court violated the then current I.C. § 34–4–33–5. That section provided in part:

"In an action based on fault that is brought against one (1) defendant or two (2) or more defendants who may be treated as a single party, and that is tried to a jury, the court, unless all the parties agree otherwise, shall instruct the jury to determine its verdict in the following manner:

(1) The jury shall determine the percentage of fault of the claimant, of the defendant, and of any person who is a nonparty. The percentage of fault figures of parties to the action may total less than that one hundred percent (100%) if the jury finds that fault contributing to cause the claimant's loss has also come from a nonparty or nonparties.

(2) If the percentage of fault of the claimant is greater than fifty percent [50%] of the total fault involved in the incident which caused the claimant's death, injury, or property damage, the jury shall return a verdict for the defendant and no further ·deliberation of the jury is required.

(3) If the percentage of fault of the claimant is not greater than fifty percent [50%] of the total fault, the jury then shall determine the total amount of damages the claimant would be entitled to recover if contributory fault were disregarded.

(4) The jury next shall multiply the percentage of fault of the defendant by the amount of damages determined under subdivision (3) and shall then enter a verdict for the claimant in the amount of the product of that multiplication."

I.C. § 34–4–33–5(a).[3] This section requires the allocation of fault to the claimant, defendant, and nonparty. *Evans v. Schenk Cattle Co.*, 558 N.E.2d 892, 895 (Ind.Ct.App.1990), *trans. denied.* In addition, the statute includes specific rules about verdict forms:

"The court shall furnish to the jury forms of verdicts that require the disclosure of:

---

**3.** This section has recently been amended. However, the amendment became in effect on July 1, 1995, and, therefore, is not relevant to our review of this case.

(1) The percentage of fault charged against each party; and

(2) The calculations made by the jury to arrive at their final verdict.

If the evidence in the action is sufficient to support the charging of fault to a nonparty, the form of verdict also shall require a disclosure of the name of the nonparty and the percentage of fault charged to the nonparty."

I.C. § 34-4-33-6.[4]

The Utleys argue that the jury was instructed that it was not required to calculate the percentage of fault if it found either that Healy was not at fault or if the Utleys failed to meet their burden of proof. The Utleys claim that the statutes were violated because the jury was not required to first allocate the percentages of fault. In addition, they contend that giving the instruction was equivalent to authorizing the jury to treat the collision as a "mere accident," which is impermissible.

We have already addressed essentially this same argument. *See Evans*, 558 N.E.2d at 896. In *Evans*, we upheld the trial court's action in giving a verdict form to the jury which required the jury to first determine whether the defendant was negligent before allocating fault. *Id.* The verdict form instructed the jury that if it found that the defendant was not negligent, it was to stop at that stage and not proceed to allocate the percentages of fault. *Id.* The plaintiffs, on appeal, argued that the verdict form's use amounted to an instruction that recognized the possibility that the incident was a "mere accident," which is impermissible under Indiana law. In upholding the use of the verdict form, we stated:

"The instruction serves to aid the jury by requiring it to determine only the issues necessary to a disposition of the case. If the jury finds no fault on the defendant's part, there is no need to address allocation of fault. On the other hand, if the jury was required to first allocate fault, it would be required to engage in a meaningless exercise of first allocating 0% fault to the defendant and then finding the defendant not negligent. Such time wasting efforts are not to be required of juries. Contrary to the [appellant's] assertion, the instruction does not amount to an advisement on the theory of 'mere accident.' Rather, it allows the jury an efficient and expedited means to render a favorable verdict for the defendant when it finds no negligence on the defendant's part."

*Id.*

The Utleys maintain that the *Evans* case was wrongly decided because its reasoning disregarded the plain words of I.C. §§ 34-4-33-5, 34-4-33-6. They argue that a clear and unambiguous statute is "superior" authority to our decision in *Evans*. Furthermore, the Utleys rely on other cases from this court to support their contention that the trial court must follow the express language of the statute in all cases. *See e.g. Forbes v. Walgreen Co.*, 566 N.E.2d 90, 92 (Ind.Ct.App. 1991) (Barteau, J.); *Wilson v. Riddle*, 540 N.E.2d 629, 630 (Ind.Ct.App.1989); *Walters v. Dean*, 497 N.E.2d 247, 253 (Ind.Ct.App. 1986).

However, we find the rationale in *Evans* to be persuasive and applicable to the present case. It is a "time wasting effort" for the jury to first determine that Healy was 0% at fault, apportion the remainder of the percentages between the city and the Utleys and then conclude that Healy was not negligent. *See Evans*, 558 N.E.2d at 896. This action is merely an exercise in futility since ultimately the jury found Healy not negligent. In this case, the jury was charged with determining whether Healy was negligent when he collided with Utley. Once the jury concluded that Healy was not negligent, there was no reasonable purpose for the jury to engage in a further allocation of fault.

In addition, the cases relied upon by the Utleys are distinguishable from the present case. In *Forbes*, the plaintiff brought a prescription to the pharmacy which was filled with the wrong medication. *Forbes*, 566 N.E.2d at 91. Later, Forbes went to the

---

**4.** This section has recently been amended. Again, however, the amendment is not relevant to our review.

pharmacy for a refill, and again the pharmacy incorrectly filled the prescription. After the error was discovered, Forbes sued the pharmacy. At trial, the court instructed the jury that it could preclude Forbes from recovering damages for any time after she knew or reasonably should have known of the pharmacy's mistake in filling the prescription. *Id.* The jury found damages of $20,000, but reduced Forbes' award by her percentage of fault.

On appeal, we reversed the judgment and ordered a new trial finding that the instructions "recall[ed] Indiana's former law of contributory negligence as a complete bar to plaintiff's recovery and are inconsistent with the current law of comparative fault." *Id.* at 91. In a footnote, we indicated that absent agreement between the parties, the jury must be instructed to first allocate fault and then enter a verdict for the defendant if the plaintiff's fault exceeds 50%. *Id.* at 92.

However, notwithstanding this notation about the statutory procedure, the primary reason requiring reversal was the trial court's inaccurate instruction about the substance of Indiana's comparative fault law. The reversal was based on substantive error rather than the trial court's incomplete compliance with the statute's procedural mechanism. "The instructions that Forbes could not recover damages for any time after she knew or should have known of Walgreen's mistake collide head-on with the statute." *Id.* at 92.

In the present case, however, the jury was properly instructed about the substance of Indiana's comparative fault law. Here, the statute was not violated on substantive grounds and, thus, the *Forbes* opinion is not contrary to our decision here today.

In the second case relied on by the Utleys, we held that the judgment in favor of the defendant on a negligence claim was error. *Wilson*, 540 N.E.2d at 630. After an auto accident between Wilson's son and Riddle, Wilson sued Riddle. Riddle denied liability and named Wilson's son as a nonparty. After a bench trial, the court concluded that:

"they both should lose. The the (sic) accident that too (sic) place was caused by the negligence of both drivers in the operation of their vehicles. From the facts and tetimony (sic) presented at trial the Court cannot attribute more negligence to either party. The Court hereby determines that the parties are responsible for their own damages."

*Id.* at 629–630. Upon review, we held that the trial court erred for two reasons. First, while the statute requires the trial court to allocate fault among the claimant, defendant, and nonparty, the judgment suggested that fault was allocated only between the claimant and the defendant. Second, the trial court implicitly allocated no more than 50% of the fault to the claimant, Wilson. After such a finding, the trial court was required to determine the total amount of Wilson's damages and multiply that amount by the Riddle's percentage of fault. After that process, the trial court was required to enter judgment against Riddle, which it failed to do. We reversed because the trial court failed to allocate fault percentages to the nonparty and failed to follow the "clear dictate of the statute that it render a verdict in favor of a claimant found to be not more than 50% at fault. . . ." *Id.* at 630.

*Wilson* is distinguishable from the present case because once the trial court in *Wilson* found that Wilson was no more than 50% at fault, it was required to determine the source of recovery from Riddle and for Wilson's damages. In such a case, the allocation of fault was not a "meaningless exercise" since Riddle was found to be negligent. Thus, the allocation of fault was not a useless act but rather was essential to determine the amount of recovery from the defendant under the comparative fault law. *Cf. Evans*, 558 N.E.2d at 896.

Here, however, if Healy was not negligent, it would not matter whether Utley was 100% at fault, whether the city of Mt. Vernon was 100% at fault, or whether the percentages of fault were split somewhere in between. Ultimately, the Utleys would not be able to recover their damages from Healy. In such a case, to require the jury to first allocate the percentages of fault is indeed a "meaningless" and "time wasting" exercise. *Id.* Instead, it is reasonable and logical that the

jury be given an "efficient and expedited means to render a favorable verdict for the defendant when it finds no negligence on the defendant's part." *Id.*

Third, in *Walters,* the plaintiff sued Dean after he hit Walter's car. *Walters,* 497 N.E.2d at 249. In Dean's answer, he denied liability and named Walters' son, Andrew, as a nonparty for leaving the car unattended.

After a bench trial, the court found for Dean and found that Walters should take nothing. *Id.* at 251. Walters filed a motion to correct error. The trial court overruled the motion and stated that "[t]he Court did consider the comparative fault of the parties. Since the plaintiff was 100% at fault, defendant isn't liable." *Id.* at 252.

On appeal, we focused on the trial court's statement when it denied the motion to correct errors. We determined that the trial court was required to allocate the percentages of fault of all parties and the nonparty, but concluded that "the finding that Walters was 100% at fault also finds that both Dean and Andrew were totally without fault, thereby satisfying, *if somewhat inartfully,* the statutory requirement concerning fault allocation." *Id.* at 254. In *Walters* then, while conceding that a fault allocation is first required, we declined to reverse the judgment when it was possible to ascertain the trial court's fault allocation. Thus, a reversal is not required despite the trial court's failure to precisely follow the statutory guidelines. Instead, when the trial court satisfies the substance of the statute, even if "somewhat inartfully", we will uphold its judgment on appeal. *Id.*

After reviewing the cases cited by the Utleys, we are persuaded that the logic of the *Evans* opinion is directly on point and controlling to our review. We do not find that our decision today, adopted from *Evans,*

contradicts our previous decisions in *Forbes, Wilson,* or *Walters.*

Moreover, we find support for our position in the most recent applicable amendment to the pattern instructions, which is almost verbatim as the given instruction in this case. Indiana Pattern Jury Instructions—Civil Instruction No. 6.03 (Supp.1994). The pattern instruction states in part that "[i]f you find the defendant is not at fault, then your verdict should be for the defendant, and no further deliberation of the jury is necessary." *Id.* In addition, the comment to the pattern jury instruction provides:

> "The jury should be required to determine only the issues necessary to the disposition of the case. If the jury determines the defendant is not negligent in the first instance or his/her conduct was not the proximate cause of the injuries, then there is no need for the jury to allocate fault between the parties."

*Id.* at comment. Thus, we find the "time wasting effort" rationale to be appropriate to this case.

■ Finally, we address the Utleys' contention that it was unfair to present the jury with two verdict forms in favor of a defendant's verdict and only one form for a plaintiff's verdict.[5] The Utleys claim that these acts, combined with a jury instruction which provided two paths for a defendant's verdict, was unnecessarily suggestive and increased the likelihood of a defendant's verdict. Here, however, the jury was instructed about the appropriate use of each verdict form. It is presumed that the jury followed the instructions as given. *Taylor v. Todd,* 439 N.E.2d 190, 194 (Ind.Ct.App.1982). Accordingly, we find that this argument lacks merit and, therefore, that the trial court properly instructed the jury and provided acceptable verdict forms.

---

**5.** We note that the Utleys also claimed that the jury verdict was internally inconsistent with the percentages of fault, in violation of I.C. § 34-4-33-9. However, the Utleys did not demonstrate any prejudice to justify relief. The jury was provided with verdict forms and instructed on how to apportion fault if Healy was negligent. Since the jury completed form C, it either concluded that Healy was not negligent or that the

Utleys failed to meet their burden of proof. In the first case, it does not matter how the jury apportioned fault to the remaining parties since the jury found that Healy was not at fault. In the second case, it would be impossible for the jury to apportion fault if the Utleys did not meet their burden of proof. Thus, the Utleys' argument that the verdict is internally inconsistent is not persuasive.

## III.

■ The third issue is whether the trial court erred in denying the Utleys' motion for judgment on the evidence regarding the nonparty defense. They argue that the trial court erred in denying their motion because "[t]he evidence showed unequivocally that the City had no notice that foliage on a tree obscured a stop sign, even if the stop sign was obscured." Appellant's brief, pp. 32–33. Thus, the Utley's maintain that since the city was immune from liability, their motion for judgment on the evidence should have been granted. We disagree.

■ Briefly restated, a municipality has a duty to care for the maintenance and repair of roads and traffic signals within their control. *Miller*, 507 N.E.2d at 1012; *Spier*, 593 N.E.2d at 1258. Before liability may be imposed, however, the municipality must have actual or constructive knowledge of a dangerous condition. *Spier*, 593 N.E.2d at 1258. A municipality may be charged with constructive notice when the condition is of such a nature that a city or its agents could, in the exercise of reasonable diligence, have discovered and corrected it. *Bodnar v. City of Gary*, 629 N.E.2d 278, 280 (Ind.Ct.App.1994), *reh'g denied.*

Both parties cite to *Bodnar*, where we upheld the granting of a motion for judgment on the evidence. *Id.* However, the facts in *Bodnar* are distinguishable because while the court acknowledged a duty on the city to maintain traffic signals, the plaintiff had presented no evidence to demonstrate that the city had actual or constructive knowledge of the visibility problem. *Id.* Since liability may not be imposed against the city until it has actual or constructive notice, we held that the trial court properly granted defendant's motion for judgment on the evidence. *Id.* In this case, however, Healy presented evidence from which the jury could conclude that the city had constructive notice of the visibility problem. Healy presented pictures of the stop sign which demonstrate an obscured view, as well as Wild's testimony about the contents of the work order. The

pictures raise the inference that the tree had been blocking the sign for an amount of time sufficient to charge the city with constructive notice. The work order specifically stated that the view of the stop sign was blocked by a tree. Therefore, the city, through its agents in the Street Department, could have discovered the visibility problem in the exercise of reasonable diligence and corrected it. *See Bodnar*, 629 N.E.2d at 280. Thus, there was sufficient evidence from which the jury could conclude that the city had constructive notice of the visibility problem. *See Spier*, 593 N.E.2d at 1255 (holding that tendered affidavits raised the inference that a signpost must have been rusting for a long time to have corroded to the point that it fell over); *Tucher v. Brothers Auto Salvage Yard*, 564 N.E.2d 560, 564 (Ind.Ct.App.1991), *trans. denied* (declining to establish a set period of time in which a defect must be present before the governmental entity could be charged with constructive notice). Accordingly, the trial court did not err in denying the Utley's motion.

■ Moreover, even had the trial court erred in denying the motion, the error would be harmless. By denying the motion, the trial court kept the City, a nonparty, in the action as a source of liability. The potential harm to the Utleys in leaving the City in the action was to allow the jury an opportunity to find Healy negligent but reduce the amount of damages recoverable from Healy by the percentage of fault attributable to the City. However, as previously discussed, since Healy was found to be not negligent, there was no amount of damages to recover from him, and, therefore no opportunity to reduce those damages by the percentage of fault attributable to the City. Accordingly, any error in denying the Utleys' motion was harmless.

## IV.

■ The final issue for our review is whether the admission of Wild's testimony reciting the terms of the work order violated Evid.R. 407.[6] This rule states:

---

6. At trial, the Utleys moved for an order in limine "prohibiting the defendant from conveying to the jury that the City of Mt. Vernon cleared branches

near the stop sign after the accident." Record, p. 171. This motion was granted. Although not clearly developed in their appellate brief, the

"When after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

Evid.R. 407. The Utleys argue that admission of the contents of the work order violated the rule because "taking the report is the first step in the subsequent remedial measure of clearing the branches." Appellant's brief, p. 35. Without addressing the merits of the Utleys' argument, we find that the admission of this evidence did not violate Evid.R. 407. The rule specifically authorizes the admission of evidence of a subsequent remedial measure when offered for a purpose other than proving negligence. Evid.R. 407. As previously discussed in sections one and three of this decision, the work order was offered to demonstrate notice to the city of a dangerous condition in an effort to establish a breach of the duty of care owed to the Utleys. Since the evidence was relevant to issues other than negligence or culpable conduct, it was properly admitted. See Evid.R. 402. Therefore, the trial court did not err in admitting the work order.

For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

BARTEAU and CHEZEM, JJ., concur.

---

Utleys seem to argue that admission of the contents of the work order violated the motion in limine because "[t]he jury could assume that the next step after taking the report and filling out a 'work order' would be to 'work' by clearing the branches." Appellant's brief, p. 34. The Utleys objected to the work order at trial claiming that admission of the evidence violated the motion. Thus, the issue is proper for our review. However, we find no merit to the Utleys' argument that prohibiting evidence about the subsequent removal of branches somehow applies to the contents of the work order.