BOB NICHOLSON APPLIANCE,
INC., Plaintiff,

v.

MAYTAG COMPANY, Defendant.

No. NA 91–131 C.

United States District Court,
S.D. Indiana,
New Albany Division.

Sept. 15, 1994.

James E. Fifer, Mark B. Geller, New Albany, IN, for plaintiff.

David W. Crumbo, Mary Ann Guenther, New Albany, IN, Kenneth J. Tuggle, Brown Todd & Heyburn, Louisville, KY, for defendant.

## ENTRY

BARKER, Chief Judge.

The Maytag Company ("Maytag") moves for summary judgment on Bob Nicholson

Appliance, Inc.'s ("BNA") Second Amended Complaint. For the reasons stated below, we grant Maytag's motion for summary judgment as to all counts.

## I. BACKGROUND

BNA, an Indiana corporation, sells home appliances at retail in New Albany, Indiana. Maytag, a Delaware corporation, manufactures and distributes home appliances. From 1979, up to November, 1990, BNA (and its predecessor, the sole proprietorship, Bob Nicholson Appliance) purchased home appliances from Maytag pursuant to several Retail Dealer Agreements ("RDA"s). *See* Second Amended Complaint, Count I, ¶ 3. In November, 1990, citing a decline in BNA's sales, Maytag cancelled its RDAs with BNA.

BNA claims that Maytag had quantity discount pricing programs (hereinafter "Super Value Program"), through which selected dealers had the opportunity to buy certain models of home appliances from Maytag at prices below what BNA would normally pay to buy the same quality appliances. BNA further maintains that it repeatedly told Maytag that it wanted to participate in the Super Value Program if it received the same pricing. *See* Second Amended Complaint, Count I, at ¶ 10. According to BNA, Maytag repeatedly refused to provide any information about the Super Value Program and failed to give BNA any opportunity to participate even though BNA met the requisite criteria.

BNA's Second Amended Complaint alleges five counts: Count I alleges that Maytag violated 15 U.S.C. § 13 [1] (the Robinson–Patman Act) by engaging in price discrimination; Count II alleges that Maytag made fraudulent representations regarding the existence of and BNA's eligibility for the Super Value Program; Count III alleges that Maytag violated 15 U.S.C. § 1 (the Sherman Anti–Trust Act) by engaging in illegal tie-in arrangements; Count IV alleges that Maytag breached its retail dealer agreements with BNA.[2] BNA claims that it is entitled to various damages including lost profits and treble damages under 15 U.S.C. § 15 (Section 4 of the Clayton Act).[3]

## II. DISCUSSION

### A. Summary Judgment Standard

 Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336

---

**1.** Section 2(a) of the Clayton Act, 15 U.S.C. § 13(a), 38 Stat. 730, as amended by the Robinson–Patman Act provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

**2.** Count V alleged that Smith's Appliance & Furniture Co. violated 15 U.S.C. § 13(f) by knowingly receiving discriminatory pricing from Maytag. Count V was dismissed with prejudice on April 29, 1994, after the Smith and BNA settled.

**3.** Section 4 of the Clayton Act, 15 U.S.C. § 15(a), provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained...."

(1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2252, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf,* 870 F.2d at 1330.

■ Although the general rule is that a court must draw all inferences in favor of the nonmoving party, *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456–58, 112 S.Ct. 2072, 2077, 119 L.E.2d 265 (1992), "antitrust law limits the extent to which permissible inferences from ambiguous evidence may be drawn." *Wigod v. Chicago Mercantile Exchange,* 981 F.2d 1510, 1514 (7th Cir.1992). If the "record is clear that the antitrust claims cannot succeed ... judicial administration is served better by disposition prior to trial." *Id.* at 1514–15.

### B. Antitrust Injury

■ Section 4 of the Clayton Act, 15 U.S.C. § 15(a), "defines the class of persons who may maintain private damage actions under the antitrust laws," *see Local Beauty Supply, Inc. v. Lamaur, Inc.,* 787 F.2d 1197, 1200 (7th Cir.1986), and requires that a plaintiff show "antitrust injury" before a court can consider other substantive violations of the Sherman or Robinson–Patman Acts. *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). In *Greater Rockford Energy & Technology v. Shell Oil Co.,* 998 F.2d 391, 395

(7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994), the Seventh Circuit noted four elements a plaintiff must satisfy to bring an action for treble damages under Section 4 of the Clayton Act: "(1) a duty recognized by the antitrust laws; (2) a violation of the antitrust laws; (3) injury to an interest protected by the antitrust laws and attributable to the antitrust violation— that is *antitrust injury;* and (4) a direct link between the antitrust violation and the antitrust injury, that is to say, *standing.* " (emphasis in original). The "antitrust injury doctrine" as elaborated in *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Cargill Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), *Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 534, 103 S.Ct. 897, 906, 74 L.Ed.2d 723 (1983)[4], and *Brunswick, supra,* "requires every plaintiff to show that its loss comes from acts that reduce output or raise prices to consumers." *See Stamatakis Industries, Inc. v. King,* 965 F.2d 469, 471 (7th Cir.1992) (quoting *Chicago Professional Sports Limited Partnership v. National Basketball Ass'n,* 961 F.2d 667, 670 (7th Cir.1992)); *see also O.K. Sand and Gravel v. Martin Marietta Corp.,* 819 F.Supp. 771, 787 (S.D.Ind.1992).

■ In the context of the Robinson–Patman Act, BNA must show that the price discrimination it suffered may substantially lessen competition. *See* 15 U.S.C. § 13(a); *Brook Group, Ltd. v. Brown & Williamson Tobacco Corp.,* —— U.S. ——, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993) (Robinson–Patman Act "condemns price discrimination only to the extent that it threatens to injure competition.").[5] Neither the Supreme Court nor the

---

4. In *Associated General Contractors,* the Supreme Court emphasized that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." Instead, the "focus of the doctrine of 'antitrust standing' is somewhat different from that of standing as a constitutional doctrine. Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make the further determination whether the plaintiff is a proper party to bring a private antitrust action." 459 U.S. at 535 n. 31, 103 S.Ct. at 907 n. 31.

5. Although the Supreme Court in *Brook Group* required a showing of actual injury to competition in the market, the holding of the case is currently limited to the context of primary line competitors. It is unclear whether the Seventh Circuit would extend *Brook Group's* requirement of actual injury to competition to secondary line competitors. *See Greater Rockford Energy & Technology v. Shell Oil,* 998 F.2d 391, 400 n. 11 (7th Cir.1993).

Seventh Circuit has addressed what constitutes a "competitive injury" under the Robinson–Patman Act; and the other circuits courts are divided on this issue. Some circuits have found that a plaintiff satisfies the antitrust injury requirement for a Robinson–Patman violation where the plaintiff showed an injury to competitors, not just consumers. *See J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 15533–35, 1539–41 & n. 17 (3d Cir.1990) (secondary line Robinson–Patman plaintiff need show only injury to a competitor; proof of injury to competition unnecessary); *Hasbrouck v. Texaco, Inc.,* 842 F.2d 1034, 1040 (9th Cir.1987) (plaintiff need only show a substantial price discrimination between themselves and their competitors over a period of time); P. Areeda & H. Hovenkamp, Antitrust Law ¶ 340.5 (Supp.1993). Others have required an injury to competition. *See Boise Cascade Corp. v. FTC,* 837 F.2d 1127, 1138–39, 1143–48 (D.C.Cir.1988); *Richard Short Oil Co. v. Texaco,* 799 F.2d 415 (8th Cir.1986) (lack of antitrust injury found where discriminating defendant was one of many sellers in the market).

In this case, BNA contends that its antitrust injury stems from Maytag's alleged fraudulent concealment of its Super Value Program. BNA claims that because it was not allowed to participate in the program, its sales and profits declined, prompting Maytag to cancel its RDA with BNA. BNA further maintains that Maytag's Super Value Program amounted to a conspiracy with Smith to utilize a predatory pricing scheme to eliminate BNA from the market as a purchaser of Maytag products. BNA concludes that the predatory pricing eliminated competition thereby causing antitrust injury. Finally, BNA points to the dramatic reduction of its sales of Maytag appliances starting from the date that Smith Furniture (BNA's competitor) enrolled in the Super Value Program.

■ The Court initially rejects BNA's contention that Maytag may have engaged in predatory pricing. In *Cargill, supra,* 479 U.S. at 117–18, 107 S.Ct. at 493, the Supreme Court defined "predatory pricing" as "pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run." The Court further noted that:

> [Predatory pricing] is a practice that harms both competitors *and* competition. In contrast to price cutting aimed simply at increasing market share, predatory pricing has as its aim the elimination of competition. Predatory pricing is thus a practice 'inimical to the purposes of [the antitrust] laws,' *Brunswick,* 429 U.S., at 488, 97 S.Ct., at 697, and one capable of inflicting antitrust injury. (emphasis in original).

*Id.* By contrast, nonpredatory pricing is "competitive pricing that cannot inflict antitrust injury upon a competitor." *Indiana Grocery, Inc. v. Super Valu Stores, Inc.,* 864 F.2d 1409, 1420 (7th Cir.1989).

The Court finds that BNA has failed to raise any material facts which would support its allegation that Maytag engaged in predatory pricing by not giving BNA the reduced Super Value Program prices. First, BNA has cited no evidence showing that Maytag cut its prices to some of its dealers for the sole purpose of eliminating competition or increasing its overall market share. Second, a predatory pricing scheme would not make sense in the context of a supplier-dealer relationship because both Maytag and BNA have a mutual interest in maximizing the amount of overall sales of Maytag appliances. Third, BNA has failed to show that Maytag had any prospect of obtaining the sort of monopolistic power that would make predatory pricing feasible. If Maytag's intent was to drive BNA out of the market and then radically increase its price on Maytag appliances through the remaining Maytag distributors, it is very likely that consumers would shift to comparable products rather than absorb the price increases. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 590, 106 S.Ct. 1348, 1358, 89 L.Ed.2d 538 (1986) (noting that predatory pricing conspiracies are especially unlikely to occur where the prospects of attaining monopoly power are slight because a company must obtain enough market power to set higher than competitive prices and then sustain those prices long enough to offset earlier losses). Indeed, BNA presents no evidence suggesting that Maytag was close to obtaining mo-

nopoly power in the relevant appliance market. The Court grants Maytag's motion for summary judgment on BNA's Sherman Act claim (Count III) because no evidence suggests that Maytag engaged in predatory pricing and thus, no antitrust injury exists.

 The more difficult question is whether BNA's Robinson–Patman Act claim survives the antitrust injury threshold requirement. BNA contends that it met the requirement by showing that competition was hurt because it lost sales to a competitor—Smith's Furniture and Appliance—through allegedly discriminatory pricing. We have already rejected BNA's contention that it was driven from the market through predatory pricing. The key question is whether one can show competitive injury under the Robinson–Patman Act by showing that a secondary line competitor was injured. As we have noted above, some circuit courts have found injury where competitors were injured. *See Feeser, Hasbrouck*[6], *supra.*

However, we are persuaded that the Seventh Circuit would extend the reasoning of *Brook Group* to secondary line competitors and require actual injury to competition. *See e.g., H.L. Hayden of N.Y. v. Siemens Medical Systems*, 879 F.2d 1005, 1021 n. 12 (2d Cir.1989) ("[A] violation of 15 U.S.C. § 13(a) (1982) requires not only proof of price discrimination, but a potential impact substantially to lessen competition or create a monopoly in any line of commerce."); *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 586 n. 2 (2d Cir.1987). Our analysis is consistent with numerous decisions from this circuit emphasizing that the historic purpose of the antitrust laws has been to protect competition, not competitors. *See e.g., Stamatakis Industries, supra*, 965 F.2d at 471, ("Entertaining claims of excessive competition would undermine the functions of the antitrust laws."); *Chicago Profes-*

*sional Sports Ltd. Partnership v. Nat'l Basketball Ass'n*, 961 F.2d 667 (7th Cir.1992) ("Judicial relief from the real injuries caused by rivalry would harm the consumers the antitrust laws are supposed to protect.").

 Applying the above standard to this case, the Court finds that BNA has failed to present any evidence of any reduction in output of Maytag appliances or increase in price to the ultimate consumers of the Maytag products. The mere fact that BNA may have had to pay more for Maytag appliances does not mean that competition as a whole suffered. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 n. 8, 110 S.Ct. 1884, 1892 n. 8, 109 L.Ed.2d 333 (1990) ("The antitrust injury requirement cannot be met by broad allegations of harm to the 'market' as an abstract entity. Although all antitrust violations, under both the *per se* rule and rule-of-reason analysis, 'distort' the market, not every loss stemming from a violation counts as antitrust injury.") BNA's pleadings raise arguments relating to injuries from *increased* competition, not the lack thereof; and these are not the concern of the antitrust laws. Finally, were an anticompetitive effect of Maytag's pricing practice really to result in less competition, BNA would not be the most appropriate party to assert consumer interests because its interests are not necessarily aligned with consumer interests. The Seventh Circuit has recognized that "[w]hen the plaintiff is a poor champion of consumers, a court must be especially careful not to grant relief that may undercut the proper function of antitrust." *Ball Memorial Hosp. v. Mutual Hosp. Ins.*, 784 F.2d 1325, 1334 (7th Cir.1986). Forcing Maytag to allow BNA to participate in a preferential pricing program may improve BNA's market position but will yield relatively few positive results for consumers.[7]

---

6. The *Hasbrouck* case is distinguishable because the retail gasoline market was very price-sensitive so that a small difference in retail prices generated significant swings in customers and sales.

7. Even were this Court to adopt the Ninth Circuit's "injury to competitors" test and conclude that the antitrust injury requirement has been met by BNA, BNA's evidence is insufficient to

create an issue for the jury on the causation issue—whether Smith Furniture's participation in the Super Value Program had a substantial effect on BNA's ability to capture a sizeable market. BNA offers no evidence refuting other relevant factors such as two recessions in the Louisville market, additional competition from Sears Brand Central and Circuit City, changes in the distribution procedures in the appliance industry, and increases by Whirlpool and G.E. in

The Court finds that BNA has failed to demonstrate "antitrust injury," and accordingly, grants summary judgment in favor of Maytag on BNA's antitrust claims—Counts I and III.

## C. Fraudulent Concealment and Fraud

■ A party asserting fraudulent concealment must prove: "(1) the wrongdoer had a duty to disclose certain facts to another, (2) it knowingly failed to do so, and (3) the other justifiably relied upon such non-disclosure to his detriment." *DeVoe Chevrolet–Cadillac v. Cartwright*, 526 N.E.2d 1237, 1240 (Ind.App. 4 Dist.1988). In *Keesling v. Baker & Daniels*, 571 N.E.2d 562, 565 (Ind. App. 1 Dist.1991), the court of appeals noted, "Fraudulent concealment can arise from either active efforts to conceal malpractice, or from a failure to disclose material information when a fiduciary or confidential relationship exists.... To be affirmative acts of concealment, the actions must be calculated to mislead and hinder a plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation." 571 N.E.2d at 565.

■ The key issue is whether Maytag had a duty to disclose its Super Value Program to BNA. BNA contends that Maytag's duty of disclosure was implicit in the RDA and in any case, stemmed from its position of trust. Moreover, it argues that employees of Maytag repeatedly told Mr. Bane, the founder of BNA, that Maytag did not offer a Super Value Program. Although there are certainly disputed issues of fact regarding the alleged misrepresentations, the Court finds that BNA has failed to raise material facts showing that Maytag had a duty to disclose information about the Super Value Program to BNA. It is well-known that Indiana does not recognize an implied good faith and fair dealing in contracts. *See Hamlin v. Steward*, 622 N.E.2d 535, 540 (Ind.App. 1 Dist. 1993). Nor do the cases in BNA's brief

suggest that a duty to disclose certain facts exists between a manufacturer and dealer. *See Lift-a-Loft Corp. v. Rodes–Roper–Love Ins. Agency, Inc.*, 975 F.2d 1305, 1311 (7th Cir.1992).[8] Because "[a] prerequisite to a claim of fraudulent concealment is the existence of a duty to disclose the concealed information," *see Jackson v. Blanchard*, 601 N.E.2d 411, 418 (Ind.App. 4 Dist.1992), and because BNA has failed to demonstrate that such a duty existed for Maytag, we grant Maytag's motion for summary judgment as to the fraudulent concealment and fraud claims.

## D. Breach of Contract

BNA failed to contest Maytag's argument regarding the breach of contract claim in its motion opposing summary judgment. Because BNA presents no material facts suggesting any obligation of Maytag to continue to supply BNA with refrigerators, we grant Maytag's motion for summary judgment as to this claim as well.

## CONCLUSION

The Court grants Maytag's motion for summary judgment as to all counts of BNA's Second Amended Complaint.

It is so ORDERED.

---

their market shares. *See* Bane depo. at 22–25, 105–106, 149–150.

**8.** Nor would BNA state a claim under common-law fraud. In order to prove a claim of fraud, Plaintiffs must show: 1) a material representation of past or existing facts; 2) which is false; 3) which was made with knowledge or reckless ignorance of its falsity; 4) which causes reliance to the detriment of the person relying on the representation. *See Knauf Fiber Glass, GmbH v. Stein*, 615 N.E.2d 115, 123 (Ind.App. 5 Dist. 1993). At a minimum, BNA has failed to show that it relied to its detriment on any alleged misrepresentation made by Maytag.