**CREATIVE DEMOS, INC., Plaintiff,**

v.

**WAL–MART STORES, INC., a Delaware Corporation, d/b/a Sam's Club, Defendant.**

No. IP 91–1256C B/F.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 7, 1997.

J. Lee McNeely, Shelbyville, IN, George W. Hopper Bank, Indianapolis, IN, for plaintiff.

Thomas L. Davis, Robert Wright, Indianapolis, IN, for defendant.

### *ENTRY*

BARKER, Chief Judge.

A trial was conducted in this case from August 29—September 1, 1994,[1] and the case was submitted to the jury on two counts: promissory estoppel and fraud. The jury returned a verdict in favor of plaintiff Creative Demos, Inc. ("Creative Demos") on the promissory estoppel count, awarding $681,126 in compensatory damages. The jury also found in favor of Creative Demos on the fraud count, awarding $137 in compensatory damages and $6,500,000 in punitive damages. Now before the court is Defendant Wal–Mart Stores, Inc., d/b/a Sam's Club's, ("Sam's Club") Motion for Judgment as a Matter or Law or, in the Alternative, for a New Trial. For the reasons discussed below, Defendant's

---

1. By consent of the parties, the Court delayed ruling on the post-trial motions until the Supreme Court had handed down its decision in *BMW of North America, Inc. v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), relating to punitive damages. The parties have had a full opportunity to submit briefs here based on that recent decision and its progeny.

motion is **granted in part and denied in part.**

## I. Background

We assume familiarity with the facts underlying this case, which are discussed in detail in our entry on summary judgment dated March 7, 1994. Therefore, we only recite here those additional background facts developed at trial and necessary to an understanding of the issues raised in the motion currently before the court.

Creative Demos is a small business, owned and operated by plaintiffs Rita DeVaney and Linda Brackin, which provides food demonstration services for customers visiting wholesale grocery stores. Prior to January, 1991, Creative Demos conducted its business activities in twenty-eight stores, each operating under the name of "Wholesale Club," located throughout the Midwest. Around February 1, 1991, Sam's Club merged with and took over the management and operations of the twenty-eight Wholesale Club stores. Creative Demos' promissory estoppel claim was based upon an alleged promise made by Sam's Club on January 21, 1991, that Creative Demos would continue to be the exclusive provider of food demonstration services in the all twenty-eight former Wholesale Club stores until September 1, 1991, when Sam's Club planned to start doing the food demonstrations in-house.

On March 1, 1991, and again on March 5, 1991, Denise Baustert n/k/a Hudson ("Baustert"), Sales Enhancement Manager at Sam's Club, asked Creative Demos to send Sam's Club complete copies of Creative Demos' 1991 demonstration schedules. When asked why Sam's Club wanted these documents, Baustert represented that the documents were needed so that Sam's Club could compare them against its own documents to confirm that various food vendors had fulfilled their commitment to participate in food demonstrations and to coordinate dates and locations of scheduled demonstrations with local store managers. Creative Demos shipped the requested documents by overnight delivery on March 6, 1991. On March 7, 1991, Sam's Club notified Creative Demos by fax that their demonstration services were being terminated at nineteen of the Sam's Club stores as of March 15, 1991, and that their services at the remaining nine stores would be terminated shortly thereafter. In fact, according to testimony developed at trial, by March 1, Baustert had decided to terminate Creative Demos, and had contacted another demonstration company, Sales Talk, to ask if it would be willing and able to take over the food demonstrations for the twenty-eight former Wholesale Clubs as of March 15. (Trial Transcript ["Tr."] II–148–49; III–47, 91).

Creative Demos' fraud claim is based upon allegations that Sam's Club's representation regarding its reason for requesting copies of Creative Demos' scheduling documents was fraudulent and that the real reason for the request was that Sam's Club wanted to give the documents to Creative Demos' replacement, Sales Talk, to enable Sales Talk to perform the demonstrations which had been scheduled by Creative Demos so there would be minimal disruption to Sam's Club's business. Creative Demos also based its fraud claim on Baustert's failure to inform them that Sam's Club had already decided to terminate its services when she requested the scheduling documents.

## II. Standards of Review

### A. Motion for Judgment as a Matter of Law

"A motion for judgment as a matter of law should be granted only when there can be but one conclusion from the evidence." *Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 636 (7th Cir., 1996), *quoting McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir.1993). In ruling on a motion for judgment as a matter of law (formerly known as a "JNOV"), a district court must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party to whom the motion is directed." *Sanders v. City of Indianapolis*, 837 F.Supp. 959, 961 (S.D.Ind. 1992), *quoting Cygnar v. Chicago*, 865 F.2d 827, 834 (7th Cir.1989); *see also Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 100 F.3d 1241, 1254–55 (7th Cir.,

1996). In applying this standard, we are not free to weigh the evidence, to pass on the credibility of witnesses, or to substitute our judgment of the facts. *Rakovich v. Wade*, 850 F.2d 1180, 1188 (7th Cir.) (en banc), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). "If the evidence, taken as a whole, provides a sufficient probative basis upon which a jury could reasonably reach a verdict, without speculation over legally unfounded claims, the motion should be denied." *Cygnar*, 865 F.2d at 835, *citing Anderson v. Gutschenritter*, 836 F.2d 346, 348 (7th Cir.1988).

### B. *Motion for a New Trial*

The test to be applied in determining whether a motion for a new trial should be granted is whether (1) the verdict is against the weight of the evidence, (2) the damages are excessive, or (3) for some other reasons, the trial was not fair to the moving party. *Emmel*, 95 F.3d at 636, *citing McNabola* at 516.

### III. Analysis

#### A. *Motion for Judgment as a Matter of Law on the Promissory Estoppel Claim*

▪ To prevail on a promissory estoppel claim, a plaintiff must show "(1) there is a promise by the promisor, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial nature on the part of the promisee, (3) which the promisee reasonably relies on and which does induce such action or forbearance, and (4) injustice can be avoided only by the enforcement of the promise." *Jarboe v. Landmark Community Newspapers of Indiana, Inc.*, 625 N.E.2d 1291, 1295 (Ind. App. 1 Dist.1993) *aff'd in part, rev'd on different grounds in part*, 644 N.E.2d 118 (Ind.1995). The reason for the doctrine is to avoid an unjust result in that justice and fair dealing require that one who acts to his detriment on the faith of a promise should be protected by estopping denial of that prom-

ise. *First Nat. Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind.1991).

Sam's Club argues that it is entitled to judgment as a matter of law on Creative Demos' promissory estoppel claim because Creative Demos failed to establish any detrimental reliance on any promise by Sam's Club. Before addressing the merits of Sam's Club's motion, we must clear up a procedural matter. Creative Demos contends that Sam's Club has waived its right to seek judgment as a matter of law as to its liability under promissory estoppel and fraud, claiming that Sam's Club failed to raise these contentions when it first made its motion for judgment as a matter of law.

▪ A party who has moved for judgment as a matter of law prior to the verdict may move again for judgment as a matter of law after the verdict, but only as to claims raised in its prior motion. *McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1555 (7th Cir.1987); *Morales v. Cadena*, 825 F.2d 1095, 1099 (7th Cir.1987). In its initial motion for judgment as a matter of law, first raised at the close of plaintiff's case and renewed at the close of the evidence, Sam's Club did, in fact, contend that "there has been no showing of reasonable reliance." (Tr. II–187). When Sam's Club renewed its motion at the close of the evidence, it moved "for a judgment on evidence as to the fraud count in its entirety." (Tr. III–244–45). Therefore, Sam's Club has properly preserved its motion as to liability on both claims.

▪ Sam's Club claims that the work done by Creative Demos after January 21, 1991, to arrange and perform demonstrations did not constitute "detrimental reliance" on any promise made by Sam's Club, because Creative Demos would have done the same things had they known their employment would only last until March 15th.[2] Sam's Club characterizes Creative Demos' actions as merely continuing to do the work they nor-

---

**2.** Sam's Club cites *Ohio Table Pad Co. Of Indiana v. Hogan*, 424 N.E.2d 144 (Ind.App.1981) for the proposition that reliance must involve more than simply the acts necessary to perform a job. *Hogan*, which held that an employee's acts of giving up a job and moving in order to accept new employment did not constitute valid *consideration* for a contract, did not involve a promissory estoppel claim and did not discuss the issue of detrimental reliance. Thus, Sam's Club's reliance on *Hogan* is misplaced.

mally did to arrange and perform demonstrations. If this were the case, it might not constitute reliance; however, evidence was introduced at trial that Creative Demos actually stepped up their efforts in reliance on Sam's Club's promise. Evidence was introduced that DeVaney and Brackin spent more time contacting vendors and recruiting and training new demonstrators (Tr. I–40–43; Exh. 74, at 19); paid for advertisements to recruit new demonstrators (Tr. I–38, 122); and spent more time meeting with supervisors and doing paperwork (Tr. I–38–39). DeVaney testified that they would not have taken on this work had they known it would only last until March 15. (Tr. I–117; Exh. 34).[3] This evidence, viewed as it must be in a light most favorable to Creative Demos, is sufficient to support the jury's determination that Creative Demos acted in reliance on Sam's Club's promise.

 Simple reliance, however, is not enough to state a claim for promissory estoppel; Creative Demos also had to show that "such reliance was to its detriment." *Muncie Indus. Revolving Loan Fund Bd. v. Indiana Const. Corp.*, 583 N.E.2d 769, 771–72 (Ind.App. 2 Dist., 1991), *reh'g denied, transfer denied, citing Hearing and Speech Clinic of Evansville, Inc. v. Indiana Department of Welfare, Medicaid Division* 466 N.E.2d 462 (Ind.App. 4th Dist., 1984). After reviewing the trial record with great care, we must agree with Sam's Club that the evidence, taken as a whole, lends no support to a finding that Creative Demos' reliance on Sam's Club's promise was "detrimental."

The classic case of detrimental reliance is one in which the plaintiff was promised a job or other opportunity; in reliance on the promise, spends time, money and effort preparing to take the job; and then doesn't get the job at all. *See e.g. Walters v. Marathon Oil Co.*, 642 F.2d 1098 (7th Cir. (Ind.) 1981) (plaintiffs purchased a service station, made improvements upon it, and forewent opportunity to make investment elsewhere, in reliance on promises that Defendant would provide them with gasoline. Defendant thereafter notified plaintiffs that it would not provide them with gasoline and they were thus unable to proceed with their plans ·to open and run a service station.). While Creative Demos, in reliance on Sam's Club's promise, did expend time, money and effort in order to schedule and perform demonstrations for Sam's Club, Sam's Club did actually utilize Creative Demos' services, albeit not for the full time promised, and Creative Demos actually made a profit by performing the demonstrations through March 15. The record establishes that between late January and early March, 1991, Creative Demos incurred total expenses of $8,360. (Tr. II–23–24). The record also shows that between January 1 and March 15, 1991, Creative Demos realized profits of at least $100,000, and possibly up to $480,000. (Tr. I–125; II–173). Thus, even though Creative Demos was eventually fired and did not make as much a profit as it expected, it did make more than enough profit to recoup any expenses it had incurred in reliance on Sam's Club's promise. We, therefore, conclude that the uncontroverted evidence does not support a finding that Creative Demos relied *to its detriment* on Sam's Club's promise. Put another way, the evidence does not support a finding that the promise must be enforced, or damages assessed, to prevent injustice, one of the elements of a promissory estoppel claim. *See* Williston on Contracts, 4th ed. § 8.5 (v. 4 p. 112) ("[E]ven the most substantial action or forbearance may not create an unjust situation, as when the promisee, though he has engaged in clear action . . . in reliance upon the promise *is not injured thereby*.") (emphasis supplied). Accordingly, because the evidence does not permit a finding that Creative Demos suffered detriment as a result of its reliance on Sam's Club's promise, Sam's Club's motion for judgment as a matter of law with regard to Creative Demos' promissory estoppel claim must be and is hereby **granted**.[4]

---

**3.** Sam's Club characterizes DeVaney's testimony as "incredible." As discussed above, the credibility of witnesses is a jury question, and may not be judged by the court on a motion for judgment as a matter of law. *See, Rakovich,* 850 F.2d at 1188.

**4.** Sam's Club also contends that lost profits were an inappropriate measure of damages on the

### B. Motion for New Trial on the Promissory Estoppel Claim

Sam's Club argues that the Court should grant a new trial on the promissory estoppel claim because the jury's finding that a promise was made and breached by Sam's Club was against the weight of the evidence. Although we have already granted judgment as a matter of law on the promissory estoppel claim, we still must conditionally decide the motion for a new trial in the event of reversal on the judgment as a matter of law. Fed. R.Civ.P. 50(c).

#### 1. Promise

■ The evidence is certainly sufficient to support a finding that Sam's Club promised to use exclusively Creative Demos to handle demonstrations until Sam's Club took the demonstrations in house. Both DeVaney and Baustert testified that such a promise was made, and a memo from Baustert to Sam's Club vendors dated February 8, 1991 corroborates this testimony. (See Tr. I–32–33; 106–09; III–76–77; Exh. 6). As discussed above, Sam's Club's contention that DeVaney's testimony is "simply not credible" is not an appropriate basis for granting a motion for a new trial, as credibility determinations are within the exclusive province of the jury, not the court. See Rakovich, 850 F.2d at 1188. The evidence also shows that the demonstration services were not taken in-house by Sam's Club until late August or September, or perhaps even later, in 1991. (Tr. III 76–77). Therefore, we find that the jury's finding that Sam's Club promised to use Creative Demos' demonstration services exclusively until September, 1991, is supported by the weight of the evidence.

#### 2. Breach

■ Sam's Club claims that it did not breach its promise when it terminated Creative Demos' services as of March 15, 1991, because its promise was conditioned on Creative Demos' performing within Sam's Club's standards, and Sam's Club was dissatisfied with Creative Demos' services. Sam's Club

did introduce evidence of its belief that some of the demonstrations performed by Creative Demos were sub-standard. However, evidence was also introduced by Creative Demos that is sufficient to support a finding that Sam's Club's claimed dissatisfaction with Creative Demos was fabricated. Specifically, the jury could reasonably have discredited testimony that Creative Demos demonstrators performed demonstrations wearing inappropriate apparel such as tube tops and shorts in unheated stores in Cleveland, Ohio in February, 1991 (Tr. II 107–09, 124–26), as well as testimony of Sam's Club employees who testified that demonstrations performed in Wholesale Club stores were of poor quality, but who could not recall specific timeframes or details (Tr. II 105–07). Finally, the fact that there was no written documentation of any of the alleged problems with Creative Demos' performance supports a jury determination that Sam's Club fabricated its claim that it was dissatisfied with Creative Demos' performance. Where a promise is conditioned on satisfaction, evidence that a claim of "dissatisfaction" was fabricated is sufficient to show breach of the promise. D & G Stout, Inc. v. Bacardi Imports, Inc., 805 F.Supp. 1434, 1449 (N.D.Ind.1992). Therefore, we find that the weight of the evidence supports the jury's determination that Sam's Club breached its promise to Creative Demos. Accordingly, Sam's Club's Motion for a New Trial on the promissory estoppel claim is **conditionally denied.**

### C. Motion for Judgment as a Matter of Law on the Fraud Claim

#### 1. Liability and Compensatory Damage Award

■ Under Indiana law, to prove a claim of common law fraud, Creative Demos was required to show 1) a material misrepresentation of past or existing facts; 2) which was made with knowledge or reckless ignorance of its truth or falsity; 3) which causes reliance to the detriment of the person relying

---

promissory estoppel claim. Because we have granted judgment as a matter of law on the merits of the promissory estoppel claim, we need

not address the issues raised regarding the proper measure of damages for that claim.

on the representation. *See Bob Nicholson Appliance, Inc. v. Maytag Co.*, 883 F.Supp. 321, 327 n. 8 (S.D.Ind.1994); *Medtech Corp. v. Indiana Ins. Co.*, 555 N.E.2d 844, 847 (Ind.App. 1 Dist.1990).

■ The evidence presented at trial supports a finding that Sam's Club fraudulently induced Creative Demos to send Sam's Club a copy of Creative Demos' compilation of scheduling documents by misrepresenting the reason for Sam's Club's request, and by intentionally failing to tell Creative Demos that Sam's Club had already decided to terminate their services when it requested the scheduling documents. Specifically, the evidence showed that on March 6, 1991, Baustert told Catherine Wise, co-owner of Sales Talk, that Creative Demos was sending Baustert the scheduling documents and that Sam's Club would not give Creative Demos notice of the termination until the documents were received. (Exh. 25; Tr. II–151). Baustert, herself, testified that she didn't tell Creative Demos they were being fired until after they'd sent the scheduling documents, because she didn't think they would send the documents if they knew they were being fired. (Tr. III–98). John Frieman, Baustert's supervisor, testified that he wasn't surprised that Baustert asked for the scheduling documents without informing Creative Demos of their termination because "we did not want any disruption in the total demonstration program." (Tr. III–214). DeVaney testified that the compilation of scheduling documents was "the core of [her] business," and that she absolutely would not have sent it to Sam's Club if Baustert had told her that Sam's Club was going to send the documents to a competitor. (Tr. I–43–44, 60). Finally, evidence was introduced that Creative Demos incurred $137 in copying and shipping expenses to copy and ship the documents to Sam's Club by overnight delivery, as requested by Baustert.

Sam's Club asks us to grant judgment as a matter of law on Creative Demos' fraud claim

on the merits, claiming that Sam's Club's actions did not amount to fraud in that Sam's Club was entitled to the scheduling information; and that the $137 in copying and shipping expenses incurred by Creative Demos in sending the requested documents to Sam's Club was not a proper measure of fraud damages. These arguments are entirely without merit.

■ We stand by our ruling in our entry on summary judgment, dated March 7, 1994, in which we rejected Sam's Club's argument that there was no actionable fraud because Sam's Club was entitled to the scheduling information, noting that we had previously found that there was no contractual relationship between the parties. (Summary Judgment entry, at 12).[5] As to the propriety of the jury's award of the $137 in copying and shipping costs as fraud damages, Sam's Club's argument that Creative Demos incurred these costs in reliance not on Sam's Club's request for the documents, but on the original promise to use Creative Demos' services, is unfounded. Fraud damages include all losses suffered in reliance on the fraudulent misrepresentation. *Captain & Co. v. Stenberg*, 505 N.E.2d 88, 98 (Ind.App. 4 Dist., 1987), *reh'g denied, transfer denied.* There can be no doubt that Creative Demos copied and shipped the scheduling documents in reliance on the request for those documents, for the evidence indicates that Creative Demos would not have shipped the documents but for the misrepresentation regarding the purpose for the request and the omission of the fact that Creative Demos was being fired. Accordingly, we uphold both the jury's verdict of liability on the fraud claim, and its award of $137 in compensatory damages on that claim. To the extent Sam's Club's motion for judgment as a matter of law is based upon the finding of liability or the award of compensatory damages on the fraud claim, the motion is denied.

---

**5.** Even if Sam's Club had some of the scheduling documents in its possession, and could have obtained others from various food vendors or store managers, obtaining the compilation of all the scheduling documents would require less work on the part of Sam's Club, and it could only have been obtained from Creative Demos. (See Tr. 1–43: the scheduling document binders contained information sent to DeVaney "piece by piece from other people and assembled and accumulated by [her]").

### 3. Punitive Damages

Sam's Club also moves for judgment as a matter of law with regard to the $6,500,000 punitive damage award, on the grounds that punitive damages are not supported by the evidence. For the reasons discussed above, we disagree with Sam's Club's argument that the $137 compensatory damages award really represents promissory estoppel damages, and that punitive damages are therefore not applicable because they cannot be based on a contract claim. *See Miller Brewing v. Best Beers,* 608 N.E.2d 975, 981 (Ind.1993) (holding that punitive damages are not allowed in a contract action and that there are no exceptions to this rule).

 We do, however, agree with Sam's Club that even though punitive damages are available on fraud claims, the evidence in this case does not support an award of punitive damages. A mere finding that the tort of fraud was committed does not, standing alone, justify an award of punitive damages. *See, Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 520 (Ind.1993). Under Indiana law, "punitive damages may be awarded only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.'" *Id, quoting Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137–38 (Ind.1988). The evidence shows that Baustert honestly, although mistakenly, believed that Sam's Club was entitled to the documents she requested, and that she misrepresented the purpose of her request and waited to notify Creative Demos of its termination in an effort to reduce the efforts Sam's Club would have to expend compiling and coordinating the various schedules and to ensure that the demonstrations would continue with minimal interruption when Sales Talk took Creative Demos' place. We find no evidence in the record that would support a finding that Sam's Club's actions were malicious or

intended to injure Creative Demos, or that the fraud was "not the result of mistake of law or fact, honest error or judgment, overzealousness, mere negligence, or other human failing." [6] Accordingly, Sam's Club's motion for judgment as a matter of law with regard to the award of punitive damages on the fraud claim is **granted**, and the punitive damages award is **vacated.**

### D. Motion for a New Trial on the Fraud Claim

Sam's Club contends that a new trial on the fraud claim is warranted because the jury's finding of fraud is against the weight of the evidence, and because the award of $6,500,000 in punitive damages is "monstrously excessive." For the reasons discussed above, we find that the evidence of fraud was sufficient not only to avoid judgment as a matter of law, but also to avoid a new trial. In other words, the jury verdict of liability on the fraud claim is supported by the weight of the evidence and will not be disturbed. Accordingly, to the extent Sam's Club moves for a new trial on the merits of the fraud claim, the motion is **denied.**

### 1. Punitive Damages

 Again, although we have granted judgment as a matter of law with regard to the award of punitive damages, we must still rule conditionally on the motion for a new trial as to punitive damages. Fed.R.Civ. Proc. 50(c). If punitive damages were available at all, we would agree with Sam's Club that a new trial is warranted because of the excessiveness of the $6,500,000 award. The United States District Court for the Northern District of Indiana recently explained how federal and state law are applied with regard to the standard of review of a punitive damages award:

> federal law provides the standard for evaluating a claim that a federal jury awarded excessive damages, even when state law provides the rule of decision. Nonetheless, a state allows punitive damage awards

**6.** Indeed, Creative Demos' argument that the evidence was sufficient to support an award of punitive damages does nothing more than recount the evidence of fraud. (See, Pltf. Brief at 16–17). As discussed above, mere evidence of fraud does not necessarily justify an award of punitive damages.

in a given class of cases on the basis of policy established by state law, and a review of the excessiveness of an award of punitive damages must be undertaken with due regard to the state's policy.

*Schimizzi v. Illinois Farmers Insurance Co.,* 928 F.Supp. 760, 783 (N.D.Ind.1996).

 Under Indiana law, punitive damages should be awarded only in an amount sufficient to punish the wrongdoer and to deter the defendant and others from similar conduct in the future. *Orkin Exterminating Co., Inc. v. Traina,* 486 N.E.2d 1019, 1021 (Ind.1986). Indiana courts have identified as factors to consider in reviewing an award of punitive damages: the nature of the tort, the extent of actual damages sustained, and the economic wealth of the defendant. *Ramada Hotel Operating Co. v. Shaffer,* 576 N.E.2d 1264, 1267 (Ind.App. 1 Dist. 1991), *clarified on rehearing,* 580 N.E.2d 306 (Ind.App.1991), *transfer denied.*[7] The federal standards, which are similar to Indiana's standards, were recently explained by the Supreme Court in *BMW of North America, Inc. v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In *BMW,* the Supreme Court held that a $2 million punitive damages award was "grossly excessive," evaluating the award with regard to the following three factors or "guideposts": 1) the reprehensibility of the defendant's conduct; (2) the disparity between the punitive damages award and the actual or potential harm cause by defendant's actions; and (3) the disparity between the punitive damages award and the legislatively determined civil or criminal penalties that could be imposed for comparable misconduct. *Id,* —— U.S. at ——–——, 116 S.Ct. at 1598–99. Applying these three "guideposts" to the facts of this case, with due regard for Indiana public policy, we find that the jury's award of $6,500,-000 in punitive damages to Creative Demos is grossly excessive.

### a. Reprehensibility of Sam's Club's Conduct

Noting that "the principle that punishment should fit the crime 'is deeply rooted and frequently repeated in common-law jurisprudence,' " the Supreme Court in *BMW* stated that the degree of reprehensibility of the defendant's conduct is "[p]erhaps the most important indicum of the reasonableness of a punitive damages award." *Id.,* —— U.S. at ——, and n. 24, 116 S.Ct. at 1599, and n. 24. The Court listed as "the aggravating factors associated with particularly reprehensible conduct," harm that is not "purely economic in nature," "indifference to or reckless disregard for the health and safety of others," "affirmative acts of misconduct," the presence of a "financially vulnerable" victim, and a "recidivist" defendant—one who "has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful." *Id.,* —— U.S. at ——, 116 S.Ct. at 1599.

In ruling on Sam's Club's motion for judgment as a matter of law, we have determined that the fraud perpetrated by Sam's Club did not involve the degree of reprehensibility necessary to merit any award of punitive damages. Therefore, even if the evidence had supported a punitive damages award, we would have great difficulty finding in that evidence a basis for concluding that Sam's Club's conduct involved a degree of reprehensibility sufficient to warrant a $6,500,000 punitive damages award. While Sam's Club misrepresentation of its reasons for requesting Creative Demos' scheduling documents certainly could be characterized as "affirmative acts of misconduct," (the omission of the fact of Creative Demos' termination was not, however, an "affirmative act") none of the other aggravating factors is present here. The harm proximately caused by Sam's Club's misrepresentations was purely economic, there was no indifference to or disregard for health or safety, Creative Demos is

---

**7.** Creative Demos' contention that Sam's Club waived any argument regarding the excessiveness of the jury's punitive damages award by not objecting to our instruction on punitive damages is meritless. Sam's Club is not, as Creative Demo's suggests, attempting to introduce a new standard for the review of a punitive damages award. Rather, Sam's Club's argument is that

the $6,500,000 is excessive according to the standard which was stated in the jury instructions. It is certainly not improper for the parties to look to cases which have interpreted and explained that standard; and it would be unreasonable and inappropriate for the court to include all of that interpretation and explanation in its instruction to the jury.

not "financially vulnerable," and there is no evidence that Sam's Club is a "recidivist." Creative Demos' argument that Sam's Club's conduct was reprehensible because of the "glowing promises" which induced Creative Demos to set up their demonstration program (Pltf. Supp. Brief, at 10) clearly references the promissory estoppel claim, which, as we have previously ruled in our summary judgment entry dated March 7, 1994, cannot serve as the basis for a punitive damages award. *See* March 7, 1991 Entry, at 20, citing *Miller Brewing*, 608 N.E.2d at 981; *see also Schimizzi*, 928 F.Supp. at 786; *Indiana and Michigan Elec. Co. v. Terre Haute Ind., Inc.*, 507 N.E.2d 588, 609 (Ind. App. 1 Dist.1987), *transfer denied* (where the evidence also establishes a tort such as fraud, the punitive damages are awarded for the tort, not the contract claim).

For the reasons discussed above, we conclude that the level of reprehensibility of Sam's Club's conduct is low, indeed, quite low, and cannot support the jury's $6,500,000 award of punitive damages.

### b. Ratio of Punitive Damages to Actual or Potential Damages

Observing that "perhaps [the] most commonly cited indicum of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff," the *BMW* Court characterized the 500:1 ratio of punitive damages to actual damages in that case as "breathtaking." *BMW*, —— U.S. at ——, ——, 116 S.Ct. at 1601, 1603.[8] As discussed above, the $681,126 promissory estoppel award cannot be considered in evaluating the reasonableness of the punitive damages award, because under Indiana law promissory estoppel claims cannot serve as the basis for punitive damages awards. Therefore, the amount to which we must compare the $6,500,000 punitive damages award is the $137 in compensatory damages

awarded by the jury on the fraud claim. While no simple mathematical formula can be applied to determine if punitive damages are excessive, we have no difficulty stating that the 47,445:1 ratio in this case is grossly excessive, in fact, it dwarfs the "breathtaking" ratio of 500:1 in *BMW*.

Finally, both the Supreme Court and the Seventh Circuit have recognized that low compensatory damages awards might, under some circumstances, support a higher ratio, where "for example, a particularly egregious act has resulted in only a small amount of economic damages." *BMW*, —— U.S. at ——, 116 S.Ct. at 1602; *see also Cooper v. Casey*, 97 F.3d 914, 919 (7th Cir.1996) ("The smaller the compensatory damages, the higher the ratio of punitive to compensatory damages has to be in order to fulfill the objectives of awarding punitive damages"). We have already determined that Sam's Club's actions were not "particularly egregious." Furthermore, the higher ratio which the Seventh Circuit found to be justified in *Cooper* was a 12:1 ratio,[9] resulting in a $60,000 total punitive damages award (with $22,500 being the highest amount assessed against any single defendant). *Cooper*, 97 F.3d at 920. Both the ratio and the total punitive damages award in *Cooper* are minuscule in comparison to the ratio and the award in this case. Therefore, even though $137 is a relatively low compensatory damages award, the facts of this case do not support an award which is 47,445 times the compensatory award. For the reasons discussed above, we find that the ratio of the punitive damages to the compensatory damages awarded to Creative Demos weighs very heavily in favor of vacating the punitive damages award, indeed, it compels that the award be vacated.

### c. Sanctions for Comparable Misconduct

In *BMW*, the Supreme Court found that a $2,000,000 punitive damages award was "sub-

---

8. We note that there is no evidence of any "potential harm" to Creative Demos, above and beyond the $137 in expenses actually incurred in reliance on Sam's Club's misrepresentations. *See Id.*, at 1602, *quoting TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460, 113 S.Ct. 2711, 2721, 125 L.Ed.2d 366 (1993) ("the proper inquiry is 'whether there is a reasonable relationship between the punitive damages

award and *the harm likely to result* from the defendant's conduct as well as the harm that actually has occurred.'") (emphasis in original).

9. In *Cooper*, the jury awarded each of the plaintiffs $5,000 in compensatory damages and $60,000 in punitive damages. *Cooper*, 97 F.3d at 916.

stantially greater" than the $2,000 civil penalty authorized by the Alabama Deceptive Trade Practices Act or the $5,000 to $10,000 sanctions available under other states' statutes. The $6,500,000 punitive damages award is even more out of line with the maximum $5,000 penalty authorized by the Indiana legislature for the crime of deception, defined as "knowingly or intentionally making a false or misleading written statement with intent to obtain property," I.C. §§ 35–43–5–3, 35–50–3–2; and with the maximum $10,000 fine for "fraud," a class D felony. I.C. §§ 35–43–5–4, 35–50–2–7. We also note that, while not applicable here because it was not effective until July 1, 1995, after the events giving rise to liability in this case took place, the recently enacted Indiana tort reform statute provides that no punitive damages may exceed the greater of three time the compensatory damage award or $50,000. I.C. § 34–4–34–4. Thus, the jury's $6,500,000 punitive damages award appears to be radically out of line with Indiana public policy as evidenced by the damages set by the Indiana legislature for comparable misconduct and by Indiana tort reform law.

### d. Financial status of Sam's Club [10]

Although we recognize that the financial condition of the defendant is a factor to be considered under Indiana law, we do not believe that Sam's Club's large size and net worth justify the $6,500,000 punitive damages award in this case. The Supreme Court has consistently stated that the fact that a defendant is a large corporation with deep pockets cannot serve to justify an otherwise excessive punitive damages award. *See, BMW,* —— U.S. at ——, 116 S.Ct. at 1604 ("The fact that BMW is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business."); *Honda Motor Co., Ltd. v. Oberg,* 512 U.S. 415, 430–34, 114 S.Ct. 2331, 2340–41, 129 L.Ed.2d 336 (1994) ("the presentation of evidence of a defendant's net worth creates the potential that juries will

use their verdicts to express biases against big businesses"); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 22, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991) (where Alabama law allowed consideration of the financial position of the defendant, Supreme Court held that "fact finder must be guided by more than the defendant's net worth. Alabama plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket."). In accordance with the Supreme Court decisions cited above, and because all other factors indicate that the jury's $6,500,000 punitive damages award is grossly excessive, we hold that the financial status of Sam's Club cannot justify the punitive damages award in this case.

For all the reasons discussed above, we conclude that the $6,500,000 in punitive damages awarded to Creative Demos is entirely unsupported by the law and by the evidence in this case. Even if Creative Demos were entitled to punitive damages, we would vacate the $6,500,000 punitive damages award and order a new trial to determine an appropriate amount of punitive damages. Accordingly, Sam's Club's motion for a new trial on punitive damages is **conditionally granted**.

### E. Unjust Enrichment

■ Although not raised by the parties, and although we have granted judgment as a matter of law on the merits of the promissory estoppel claim, we believe that the interests of justice and providing fair compensation to the plaintiff require that we uphold the jury's award of $681,126 to Creative Demos, but under the theory of unjust enrichment rather than promissory estoppel. While this action by the Court is admittedly somewhat unusual, we believe that under the circumstances of this case the Court must exercise its discretionary power to adjust the remedies so as to do complete justice. *See Walters,* 642 F.2d at 1100.

Rule 15(b), F.R.C.P., permits amendments to the pleadings to conform to the evidence "[w]hen issues not raised by the pleadings

---

**10.** Defendant submitted an affidavit of Professor A. Mitchell Polinsky in support of its argument that the punitive damages in this case were excessive. We did not find it necessary to refer to

Professor Polinsky's affidavit in reaching our decision that the punitive damage award is excessive. Accordingly, Creative Demos' motion to strike the Polinsky affidavit is denied as moot.

are tried by the express or implied consent of the parties ...". In such instances, "they shall be treated in all respects as if they had been raised in the pleadings." Such motions may be raised at any time, "even after judgment," and the Court is directed to permit such amendments "freely when the presentation of the merits of the action will be subserved thereby" and the opposing party is not prejudiced thereby. For the reasons set out below, we find that the claim of unjust enrichment was in fact tried by both the express and implied consent of the parties and that no prejudice befalls Sam's Club at this juncture from permitting this amendment to the pleadings. Further, the evidence reflects that the $681,126 awarded by the jury as compensatory damages on the promissory estoppel claim represented an estimate of Creative Demos' lost profits through September, 1991.[11] The jury had been instructed with regard to promissory estoppel damages that "[y]ou may award damages of lost profits only if you find that Wal–Mart was unjustly enriched." *Jury Instruction* No. 12. Thus, because the jury awarded lost profits as damages on the promissory estoppel claim, it necessarily found that Sam's Club was unjustly enriched.[12]

Indiana courts generally treat unjust enrichment, quantum meruit, contract implied-in-law, constructive contract and quasi-contract as different labels for the same thing:

merely legal fictions invented by the common law courts where in fact there is no contract, but where circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise.

*Bright v. Kuehl,* 650 N.E.2d 311, 316, n. 7 (Ind.App.1995), *reh'g denied, transfer denied citing Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind.1991), *reh'g denied, cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415. Under Indiana law, to prevail on a claim of unjust enrichment, a plaintiff must establish "that a measurable benefit has been conferred on the defendant under circumstances in which the defendant's retention of the benefit without payment would be unjust." *Wright v. Pennamped,* 657 N.E.2d 1223, 1229–30 (Ind.App.1995), *transfer denied, clarified on denial of reh'g,* 664 N.E.2d 394 (Ind.App.1996), *citing Bayh,* 573 N.E.2d at 408. The plaintiff must also establish that the defendant impliedly or expressly requested the benefit be conferred. *Id.,* at 1230. Unjust enrichment is an issue that both parties, and the jury, have considered. As we have already pointed out, in deciding to award lost profit damages on the promissory estoppel claim, the jury necessarily considered the question of unjust enrichment and found that Sam's Club was unjustly enriched. Creative Demos has argued that Sam's Club was unjustly enriched because "Wal–Mart unjustly received and retained the benefit of [Creative Demos'] substantial efforts when, to avoid the delay and disruption of recompiling demonstration schedules for over one hundred fifty (150) vendors, Wal–Mart obtained copies of Creative's schedules." (Pltf's Brief, at 12).

It is undisputed that Sam's Club expressly requested that Creative Demos send its compilation of scheduling documents to

---

11. Plaintiff submitted evidence that the measure of its net lost profits was either *$782,493,* based upon the number of demonstrations scheduled by Creative Demos that were actually performed by Sales Talk, (*see* Exh. 61; Tr. I–74–78), or *$907,-913,* based upon the total number of demonstrations planned by Creative Demos from March 16, 1991 to September 30, 1991. (See, Exh. 50, Tr. I–72–74). Sam's Club contended that these figures were inaccurate because they were based upon an inflated hourly rate, and that the correct figure should be *$510,102.* (Tr. II–24–31, 161–66; III–160. Finally, we note that in his closing argument, counsel for Creative Demos asked the jury to award lost profit damages "in an amount of $680,000 to $907,000." (Tr. IV–54).

12. We further note that during its deliberations, the jury requested explanation of the term "unjust enrichment" from the court. The court responded that "[a] person or corporation is enriched if he/it has received a benefit. A person or corporation is unjustly enriched if the retention of the benefit would be unjust or inequitable." That the jury asked this question of the court further indicates that the jury considered the issue of whether Sam's Club was unjustly enriched in determining the amount of promissory estoppel damages.

Sam's Club. The evidence reflects that documents sent to Sales Talk (Exh. 35–45) included documents that were part of the compilation of demonstration schedules sent by Creative Demos to Sam's Club. (Tr. I–62–63; II–156; Exhs 1, 2, 35–45). DeVaney testified to the effort involved in collecting and compiling Creative Demos' compilation of scheduling documents. She testified specifically that if the documents were lost or destroyed, it would take "weeks and weeks" to reconstruct the whole set of documents. (Tr. II–41). DeVaney also testified as to her belief that it would not have been possible for Sales Talk to have taken over the demonstrations on March 15, 1991, had it not received Creative Demos' scheduling documents. DeVaney estimated that it would have taken Sales Talk over a month to get everything in place and ready to go. (Tr. II–48). Testimony was introduced that demonstrations were very beneficial to a wholesale club, and that the economic impact on Sam's Club, had Sam's Club not induced Creative Demos to send the compilation of scheduling documents, would have been a "tremendous amount of lost sales from no performance of demonstrations" during the transition. (Tr. II–42; 48–49; 91–92). Thus, the evidence supports a claim that Sam's Club was unjustly enriched in that it was able to continue receiving demonstration services without disruption because it fraudulently obtained the products of Creative Demos' labors.

▪ The measure of damages for unjust enrichment in Indiana is the fair value of the work and services performed. *Shashi Ahuja, M.D. v. Lynco Ltd. Medical Research,* 675 N.E.2d 704, 709 (Ind.App.1996); *Nestor v. Kapetanovic,* 573 N.E.2d 457, 459 (Ind. App. 3 Dist.1991); *City of Indianapolis v. Twin Lakes Enterprises,* 568 N.E.2d 1073, 1078 (Ind.App. 1 Dist.1991) *reh'g denied, transfer denied.* We believe that the $681,-126 figure arrived at by the jury as an estimation of Creative Demos' lost profits also serves as a fair estimation of the commercial value of work and services performed by Creative Demos in scheduling demonstrations for March 16 through September 30, 1991, and compiling the schedules into the two binders that Sam's Club fraudulently obtained from Creative Demos. Therefore,

we **uphold** the jury award of $681,126, but we do so under an unjust enrichment theory. In the alternative, should the Court of Appeals determine that this figure is not an appropriate measure of unjust enrichment damages, we **conditionally** order a new trial to determine the amount of damages due Creative Demos for unjust enrichment.

## IV. CONCLUSION

For the reasons discussed above, the court rules as follows:

1) The court finds that the evidence does not support a finding that Creative Demos relied *to its detriment* on Sam's Club's promise. Therefore, we **grant** judgment as a matter of law on Creative Demos' promissory estoppel claim.

2) The court finds that the weight of the evidence supports a finding that Sam's Club made and subsequently breached a promise to use Creative Demos' demonstration services exclusively until September, 1991. Therefore, we **conditionally deny** the motion for a new trial on the promissory estoppel claim.

3) The court finds that the evidence supports a finding that Sam's Club fraudulently induced Creative Demos to send its compilation of scheduling documents to Sam's Club, and that $147 is the proper measure of damages on the fraud claim. Therefore, we **deny** judgment as a matter of law as to liability and compensatory damages on the fraud claim.

4) The court finds that the evidence does not support a finding that Sam's Club's actions rose to the level of reprehensibility required to support an award of punitive damages. Therefore, we **grant** judgment as a matter of law as to the availability of punitive damages and **vacate** the punitive damages award of $6,500,000.

5) The court finds that the weight of the evidence supports the jury's verdict of liability on the fraud claim. Therefore, we **deny** the motion for a new trial on the fraud claim.

6) The court finds that the jury's award of $6,500,000 is monstrously excessive. Therefore, we **conditionally grant** the motion for a new trial as to the amount of the punitive damages award.

7) We **amend the pleadings,** pursuant to Rule 15(b), F.R.C.P., to include an unjust enrichment claim, which was in fact tried by both the express and implied consent of the parties. We find that the evidence establishes that Sam's Club was unjustly enriched and that the jury implicitly found unjust enrichment when it awarded Creative Demos lost profits on its promissory estoppel claim. We **uphold** the jury's award of *$681,126,* but we do so under an unjust enrichment theory. In the alternative, we **conditionally order** a new trial to determine the appropriate amount of damages due Creative Demos for unjust enrichment.