## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 15 2015, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

C. Melissa Cunnyngham
Church Church Hittle & Antrim
Tipton, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeff Griffin, d/b/a JDA Trailers<br>*Appellant-Defendant*,<br><br>v.<br><br>Dennis Martin and Lisa Martin,<br>*Appellees-Plaintiffs*. | July 15, 2015<br>Court of Appeals Case No.<br>80A02-1407-SC-495<br>Appeal from the Tipton Circuit Court<br>The Honorable Richard L. Russell, Judge<br>Cause No. 80C01-1402-SC-23 |

**Brown, Judge.**

[1] Jeff Griffin, d/b/a JDA Trailers, appeals from the judgment of the small claims court against him and in favor of Dennis and Lisa Martin in the amount of $1,896.62 for the costs of repairs to a vehicle Griffin sold the Martins plus attorney fees. Griffin raises two issues, which we consolidate and restate as whether the small claims court erred in ordering him to pay the costs incurred by the Martins to repair the vehicle he had sold them "as-is" and with no warranty. We reverse.

### Facts and Procedural History

[2] On September 5, 2013, the Martins purchased a 2001 Chevy Silverado from Griffin at his used car dealership in Windfall, Indiana. Dennis Martin signed a Used Vehicle Order indicating the car's sales price was $10,000, and the handwritten words "as-is" were written in the area for "Remarks" on the document. Appellant's Appendix at 18. Dennis also signed a "Buyer's Guide," and the box next to the words "AS IS-NO WARRANTY" was marked. *Id.* at 20. Under the box, the document provided: "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." *Id.*

[3] While driving the vehicle home, the Martins were able to stop the vehicle only by using the brakes on the trailer being pulled by the vehicle. The vehicle was inspected by two independent mechanics who found the pads and rotors were severely grooved with pieces of metal missing, and the hubs were worn on the front of the vehicle. The Martins incurred expenses of $1,196.62 to make repairs.

[4] On February 5, 2014, the Martins filed a Notice of Claim requesting damages in the amount of $1,081.12 plus attorney fees of $700 and court costs, and they alleged that the vehicle they purchased from Griffin "was not road worthy in that it had defective/non-existent brakes." *Id.* at 10. The court held a hearing on April 25, 2014, at which the parties presented testimony and evidence. The Martins presented evidence of an invoice and receipt from Paul-Richard GM Center, two receipts from NAPA Auto Parts, invoices from Car Recyclers and Jim's Garage, and a summary of services and costs of vehicle repair and diagnosis by Thomas Nelson.

[5] The Martins testified that Griffin sold them a vehicle that was dangerous for them to drive and that at some point after the time of sale they were able to stop the vehicle only by using the brakes on the camper being pulled by the vehicle at the time. They stated that they drove the vehicle to the Paul-Richard GM Center dealership for inspection on September 6, 2013, and that the "[s]uggested repairs . . . included re-hooking up the ABS, replacing front hubs, and advising that fuel 'modles' were bad." *Id.* at 26. The Martins indicated they did not have the repairs completed at the dealership but paid for the cost of the inspection. They presented further testimony that they then drove the vehicle to Nelson for inspection and repair on September 7, 2013. Nelson testified that "the vehicle was not roadworthy," and his written summary stated that the vehicle's bearings were bad in both front hubs which triggered the ABS sensor inside the vehicle, the right hub/bearing was worn to the point of near-separation, new front brake pads had been installed at some point without

replacing severely grooved rotors, the rotors had chunks of metal missing from the rotor surfaces, all four shocks were severely rusted and worn out, and that the fuel level sensor unit was not working properly. *Id.* The Martins submitted evidence that they paid Nelson for the repairs, Napa Auto for parts, and Car Recyclers and Jim's Garage for parts and repair in November 2013.

[6] Griffin introduced the Used Vehicle Order and Buyer's Guide and testified that he obtained the Silverado from Dellen Chrysler in Greenfield on July 26, 2013. Tim Phifer, an employee of Griffin, testified that he drove the vehicle to Windfall, where it was placed in the back of the lot, and that a few weeks later Dennis Martin expressed an interest in the vehicle and a camper. He testified that Griffin stated to Dennis that the vehicle had not been serviced since its acquisition, that Dennis test-drove the vehicle and asked about the ABS light which was on, that Griffin stated it could be due to the fact the vehicle may need a new front wheel bearing, that Dennis responded by saying that he would take care of whatever was causing the ABS light to be on, and that Dennis did not mention anything further about how the vehicle drove. Phifer further testified that the parties came to an agreement on price with the understanding that the sale would include no warranty, the vehicle was then placed on the back lot, and Griffin performed no further service or inspection. Phifer stated that the Martins returned on September 5, 2013, executed the sales agreement and Buyer's Guide, paid the agreed-upon price, and drove the truck off the lot while towing the camper. On cross-examination, Phifer testified that, between the time the Martins took possession of the vehicle on September 5, 2013, and

the time it was inspected by their mechanic on September 6, 2013, the vehicle had been driven 201 miles by the Martins. He also testified that Griffin encourages buyers to have a vehicle inspected prior to a sale. The Martins' counsel stated that they agreed they bought the vehicle with no warranty but that they were bringing their claim under "civil tort law." *Id.* at 29. The court took the matter under advisement.

[7] On June 20, 2014, the court entered an order finding that the Martins had purchased the 2001 Chevy Silverado from Griffin on September 5, 2013; that Griffin "sold the vehicle 'as is' with no warranty"; that while driving home the Martins "discovered the vehicle was not road worthy and were only able to stop the vehicle by using the brakes on the trailer being pulled by the vehicle"; and that the vehicle was subsequently inspected by two separate and independent mechanics who both found the pads and rotors were severely grooved with pieces of metal missing and the hubs were found to be so worn on the front of the vehicle the right hub bearing was at the point of separation. *Id.* at 7. The court also found that the Martins incurred costs of $1,196.62 "to make the vehicle road worthy" and $700 in attorney fees. *Id.* The court's ultimate finding was that Griffin "committed a tort against the [Martins] by selling a vehicle that was not road worthy and placed them in danger, as well as any other individuals on the road" and that, "because of [Griffin's] tort, [he] is liable to the [Martins] for their reasonable expenses in repairing the vehicle as well as their reasonable attorney fees." *Id.* at 8. The court entered judgment in favor of

the Martins and against Griffin in the amount of $1,196.62 for costs and $700 for attorney fees.

## *Discussion*

[8] The issue is whether the court erred in finding Griffin liable for the Martins' costs of repair of the vehicle he sold them "as-is" and with no warranty. The Martins did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing his arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes *prima facie* error. *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Wright v. Wright*, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). Questions of law are still reviewed *de novo,* however. *McClure v. Cooper*, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

[9] Judgments in small claims actions are subject to review as prescribed by relevant Indiana rules and statutes. Ind. Small Claims Rule 11(A); *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013). In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Ind. Trial Rule 52(A); *Eagle Aircraft*, 983 N.E.2d at 657. In determining whether a judgment is clearly erroneous, the appellate tribunal does not reweigh the evidence or determine the credibility of witnesses but

considers only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Eagle Aircraft*, 983 N.E.2d at 657. A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of evidence. *Id.* This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *Id.* We presume that the trial court correctly applied the law and we give due regard to the court's opportunity to judge the credibility of the witnesses. *Id.* However, "this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). "Similarly, where a small claims case turns solely on documentary evidence, we review de novo, just as we review summary judgment rulings and other 'paper records.'" *Id.*

[10] Griffin asserts that the court erred in failing to apply the economic loss rule and in finding Griffin liable to the Martins in tort for the costs to repair their vehicle. Griffin also argues that exclusions of warranties are permitted under Indiana's Uniform Commercial Code (the "UCC") and that the court's order effectively circumvented his rights under the UCC when it awarded Martins the precise relief in tort that was clearly excluded in their contract.

[11]     Ind. Code § 26-1-2-316 provides in part that, "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults', or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." It is well-settled that automobile dealers may use this law to exclude express warranties and make it plain that there are no implied warranties. *Town and Country Ford, Inc. v. Busch,* 709 N.E.2d 1030, 1032 (Ind. Ct. App. 1999); *DeVoe Chevrolet-Cadillac Inc. v. Cartwright*, 526 N.E.2d 1237, 1240 (Ind. Ct. App. 1988).

[12]     Here, the Used Vehicle Order included the handwritten words "as-is," and the Buyer's Guide included a marked box next to the words "AS IS-NO WARRANTY" and below that stated "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." Appellant's Appendix at 18, 20. Accordingly, any implied warranty was excluded in this case. Further, the record contains no evidence showing Griffin made a representation which created an express warranty, and absent such evidence the "as-is" limitation controls. *See Cartwright*, 526 N.E.2d at 1240.

[13]     Turning to whether the Martins were entitled to recover their repair costs by alleging that a tort occurred, we observe that the economic loss rule precludes tort liability for purely economic loss. *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 727 (Ind. 2010). Economic losses are disappointed contractual or commercial expectations. *Gunkel v. Renovations,*

*Inc.*, 822 N.E.2d 150, 154 (Ind. 2005), *reh'g denied*. "Damage to the product itself, including costs of repair or reconstruction, is an 'economic loss' even though it may have a component of physical destruction." *Id.* If the plaintiff's injury results from a defective product or service, the defendant is liable under a tort theory only if the defect causes personal injury or damage to property other than the product or service the plaintiff purchased. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 726. A defendant is not liable under a tort theory for a pure economic loss caused by its negligence, including damage to the product or service itself. *Id.* at 726-727. *See also Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003) (stating that "damages recoverable in tort from negligence in carrying out the contract will be for injury to person or physical damage to property, and thus 'economic loss' will usually not be recoverable"), *reh'g denied*; *Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1073-1074 (Ind. 1993) (stating that, "where the loss is solely economic in nature, as where the only claim of loss relates to the product's failure to live up to expectations, and in the absence of damage to other property or person, then such losses are more appropriately recovered by contract remedies"), *modified on other grounds by* 644 N.E.2d 84 (Ind. 1994). While the economic loss rule "operates as a *general* rule to preclude recovery in tort for economic loss, it does so for *purely* economic loss—pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service provided by the defendant)—and even when there is purely economic loss, there are exceptions to the general rule." *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 730; *see also id.* at 736 ("Indiana courts should recognize that the rule is a *general* rule

and be open to appropriate exceptions"). Some of these exceptions include lawyer malpractice, breach of duty of care owed to a plaintiff by a fiduciary, breach of duty to settle owed by a liability insurer to the insured, and negligent misstatement. *Id.* at 736.

[14] Here, the Martins' costs of repairing the Silverado constituted economic loss. The Martins did not allege or present evidence that its loss was not purely economic, that personal injury or damage to other property occurred, or that any other recognized exception to the economic loss rule is applicable under the circumstances. Thus, the economic loss rule is applicable and Griffin is not liable for the Martins' repair costs under a tort theory.

[15] For these reasons, we conclude that Griffin has demonstrated *prima facie* error in the trial court's order awarding repair costs to the Martins. We also reverse the court's order as to attorney fees.

## Conclusion

[16] Based on the foregoing, we conclude that the trial court erred when it awarded damages and attorney fees to the Martins in contravention of their agreement that the Silverado they purchased was sold "as is," and the evidence shows that they suffered only economic loss precluding recovery under a tort theory. We reverse the judgment of the small claims court.

[17] Reversed.

Crone, J., and Pyle, J., concur.